(No. 18739.—)

THE CITY OF EAST ST. LOUIS, Appellee, *vs.* THE AMERICAN ASPHALT ROOF CORPORATION *et al.* Appellants.

*Opinion filed June 23, 1928.*

WHEELER & OEHMKE, (WILLIAM C. DUNHAM, of counsel,) for appellants.

DAN McGLYNN, JR., for appellee.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

The city of East St. Louis filed a petition in the city court of that city for the confirmation of a special assessment to pay the cost of paving and improving a system of streets. Objections were filed by the American Asphalt Roof Corporation, the Stormcote Roofing Corporation and R. P. Munger, owners of certain lots assessed for the proposed improvement. The legal objections were overruled. The objectors waived the question whether their lots were assessed more than their proportionate shares of the cost of the improvement. The objection that the lots were assessed more than they would be benefited was tried by a jury, and the verdict was adverse to the contention of the objectors. Motions for a new trial were denied, judgment was rendered on the verdict, and the objectors prosecute this appeal.

The streets, portions of which it is proposed to improve, are Renshaw, Summit, College and Ohio avenues, and Twenty-sixth, Twenty-ninth, Thirty-first, Thirty-second, Thirty-third and Thirty-fifth streets, in the city of East St. Louis. The American Asphalt Roof Corporation owns lots 1 to 6, inclusive, in block 2 of North Renshaw place.

These lots are numbered from north to south, face west on Thirty-first street and have a depth of 120 feet. Lot 1, which is separated from the right of way of the Louisville and Nashville railroad by an alley, has a frontage on Thirty-first street of 31 feet and was assessed $310.52. Each of the other lots has a frontage of 50 feet and was assessed $500.86. The company owns additional land immediately east and southeast of the lots and extending approximately 600 feet south from the right of way of the Louisville and Nashville railroad to St. Clair avenue. The company's plant occupies about eleven acres. The lots, which form the west end of the company's property, are devoted to various uses. Large storage tanks for asphalt are located upon lots 1 and 2, a brick boiler-house stands in part on lots 3, 4 and 5, and drums, scrap iron, brick and cinders are stored upon the lots. A switch-track runs from the railroad across Thirty-first street and over lot 2 into the company's plant. An iron fence about seven feet high, with several gates, stands along the west or front line of the lots. There are also two entrances to the plant from St. Clair avenue on the south. The Stormcote Roofing Corporation owns lots 1, 2, 3, 4, the south half of lot 5 and lots 6 and 7, and Munger owns the north half of lot 5, all in block 1, in the same subdivision. These lots face east on Thirty-first street, are situated directly opposite lots of the same numbers, respectively, in block 2, and are also 120 feet deep. Lot 1, with a frontage of 31 feet, was assessed $340.52, while each of the other lots, with a frontage of 50 feet, was assessed $530.86. These lots are vacant and unimproved.

The surface of the lots on both sides of Thirty-first street is lower than the surface of the streets in the vicinity. The land is swampy, and, while some filling has been done, water stands on a portion of the lots west of Thirty-first street. There are five frame houses on the east and two brick houses on the west side of that street north of

St. Clair avenue, and all these houses are occupied. Thirty-first street has a cinder roadway and ends at the Louisville and Nashville railroad right of way. The railroad is eight or nine feet above the present level of the street. St. Clair avenue has a 36-foot roadway, which is improved by a concrete pavement, and the street is one of the principal thoroughfares of the city. Proceeding north from the Louisville and Nashville railroad a person crosses in succession the St. Louis and O'Fallon railroad yards and the Caseyville road and then enters Jones Park, a public recreation ground.

On the question of benefits nine witnesses testified on behalf of appellants and six for the city. Four of appellants' witnesses expressed the opinion that none of the lots would be benefited by the construction of the improvement. One of these witnesses testified that although he had not approached or set foot upon the lots for fifteen years, yet he was familiar with them because they could be seen from St. Clair avenue, over which he often traveled. Upon objection the jury were instructed to disregard his testimony. Another witness testified that the lots on the east side of Thirty-first street would receive no benefit while those on the opposite side of the street would be benefited from $2 to $3 per front foot. Four witnesses testified that some benefit would result to all of the lots. One fixed the maximum at $1, another at $4, another at $5, and the last at $6 per front foot. The following reasons were given by appellants' witnesses for their opinions: That the surface of the lots west of Thirty-first street is below the level of the street, resulting in the inundation of the lots wholly or partially; that the lots are used as a dumping ground, and the filling, which is objectionable, will have to be removed before buildings can be erected on the ground; that while the lots east are not as low as those west of Thirty-first street, yet they are below the level of the abutting street; that the lots are so near the plant of the American Asphalt Roof Corporation that they are, and persons oc-

cupying them will be, subjected to the effects of the gases and smoke emanating therefrom; that the lots are not suitable for residential purposes because the neighborhood is industrial in character and a railroad is in close proximity; that the use of the lots by factories is restricted because the area available for industrial enterprises is limited; that Thirty-first street terminates at the railroad and serves no territory to the north; that property adjacent to a trunk line railroad, such as the Louisville and Nashville railroad is at this point, is not as valuable for industrial purposes as if it were located upon a belt railroad, and that the existing dwellings establish the neighborhood as an inferior residential district.

Of the witnesses called by the city, one testified that the benefits per front foot which would be derived from the improvement were from $5 to $6 to lots on the west and from $6 to $7 to lots on the east side of Thirty-first street. Four witnesses expressed the opinion that all the lots would be benefited $10 per front foot, and one witness testified that the benefits would be from $10 to $11 per front foot to lots facing west and from $10 to $12 to lots facing east on Thirty-first street. The reasons given by the city's witnesses for their estimates of the benefits to accrue from the making of the improvement were the drainage of the property, the improved condition of the neighborhood for residential and other purposes and the increased rentals consequent thereon, the sustantial enhancement in the value of the property and its greater marketability.

The only question to be determined is whether the lots of appellants were assessed more than they will be benefited by the improvement. The determination of this question must necessarily be based upon the opinions of the witnesses. Their appearance while on the stand, their manner of testifying and their apparent intelligence or lack of it had much to do with the weight accorded to their opinions by the jury and the trial judge. Hence on a review

of the question whether property has been assessed more than it will be benefited, the jury's verdict approved by the trial judge, or the trial court's finding, will not be disturbed unless it is palpably against the weight of the evidence. *City of Chicago* v. *Marsh,* 238 Ill. 254; *City of Park Ridge* v. *Wisner,* 253 id. 360; *Ownby* v. *City of Mattoon,* 306 id. 552; *Topliff* v. *City of Chicago,* 196 id. 215; *City of Pana* v. *Baldwin,* 265 id. 119; *City of Chicago* v. *Weber,* 260 id. 105.

Appellants contend that because the minimum figures in the range of benefits to which certain of the city's witnesses testified do not equal the assessment upon appellants' lots, there is therefore no testimony to show that the benefits to those lots will equal the assessment thereon. While the minimum estimate of benefit to which a witness testifies must be considered, yet the maximum estimate given by the same witness cannot be ignored. The lots in block 2 on the east side of Thirty-first street were assessed at $10.0168 per front foot. At this rate the aggregate assessment on the six lots facing west would exceed the benefits to the same lots as fixed by all of the city's witnesses save one, by $4.72. When it is considered that opinions concerning benefits do not purport to be mathematically exact, this difference is negligible. There was testimony, however, that the maximum benefit to the property on the east side of Thirty-first street was $11 per front foot, and at that rate the benefits exceeded the assessment. The average assessment on the lots abutting Thirty-first street on the west exceeds a benefit of $10 per front foot by sixty-five cents. These lots, it appears from testimony adduced by the city, are benefited from $10 to $12 per front foot. Hence the assessment on the lots west of the street was also within the range of the testimony.

It is contended by appellants that the benefit to be derived from a local improvement should be based upon and determined by the present use of the property assessed. An

improvement, such as paving a street, it is argued, is of little, if any, benefit or advantage to a manufacturing plant which is otherwise accessible and which uses the property assessed as a storage yard. Some of the testimony offered by appellants was based upon this theory. Where property is restricted by grant or statute to a particular use, from which it cannot legally be diverted, and the property is at the time of the improvement devoted to the restricted use, the true measure of the benefit which the improvement will confer is the increased value of the property for the restricted use. (*City of Lincoln* v. *Chicago and Alton Railroad Co.* 262 Ill. 11; *City of Chicago* v. *Kehilath Anshc Mayriv,* 284 id. 210; *City of Chicago* v. *Chicago City Railway Co.* 309 id. 448.) Where, however, land is voluntarily devoted to a private use, which may be changed at any time, the benefit derived from a local improvement is not confined to the owner's present use of the property but extends to any use to which the property is adapted. *City of Lincoln* v. *Chicago and Alton Railroad Co. supra; Clark* v. *City of Chicago,* 166 Ill. 84; *Leitch* v. *Village of La-Grange,* 138 id. 291.

The testimony in this case is conflicting. That offered by appellants tends to show that the assessment exceeds the benefits which will accrue to their lots. Some of appellant's witnesses based their opinions concerning benefits upon the present uses of the lots without considering other uses for which they were adapted and to which they might be devoted. The assumption that the present uses to which the lots were put must be permanent was erroneous. The testimony offered on behalf of the city is sufficient to justify the jury's verdict. In any event, it cannot be said that the verdict and judgment are palpably against the weight of the evidence.

The judgment of the city court is affirmed.

*Judgment affirmed.*