**POSSELIUS et al. v. CITY OF DETROIT.**

No. 2705.

District Court, E. D. Michigan, S. D.

Nov. 6, 1930.

Douglas, Barbour and Wing, of Detroit, Mich., for plaintiffs.

Walter Barlow, of Detroit, Mich., for defendant.

TUTTLE, District Judge.

This is a suit by certain taxpayers to restrain the city of Detroit from collecting a special assessment levied against land of the plaintiffs in said city, on the grounds that said assessment was arbitrary and illegal and that unless enjoined it would deprive the plaintiffs of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. The cause has been heard and submitted on bill and answer and on the proofs taken in open court.

The special assessment in question represents the portion (one-half) of the cost of widening, opening, and extending Vernor Highway, a public street in said city, assessed against the lots, including those of the plaintiffs here involved, fronting on such street; the city officials having determined that the improvement just mentioned constituted a local improvement which specially benefited such lots. The other one-half of such cost was assessed against the general public and spread upon the general tax rolls.

The plaintiffs contend: (1) That the purpose and effect of the improvement in question were to provide a new, through highway for the city, and that therefore such improvement was a general, not a local, improvement, and that hence no part of its cost was properly assessable as a special assessment; (2) that such improvement resulted in no special benefit, nor in any benefit, to the land of the plaintiffs, and that therefore such special assessment was improperly levied against such land; and (3) that the legal proceedings in connection with such special assessment were not conducted in accordance with the applicable provisions of the charter of the city of Detroit. These contentions, all of which are disputed by the defendant, will be considered in the order in which they have just been mentioned.

The material facts, as disclosed by the record and found by the court, are as follows:

Vernor Highway, formerly known as High street, runs entirely across the city of Detroit, in an easterly and westerly direction from Dix avenue on the west side of the city to Waterloo street on the east side.

On November 8, 1921, pursuant to the provisions of the charter of the city providing for the initiative and referendum, and in order to relieve the congestion of traffic on the downtown streets of the city and to provide a new, through, main thoroughfare by which the public might traverse the city with speed and safety, the electors of said city adopted an ordinance, the first section of which provides as follows:

"A public improvement, to-wit: a public street or highway to provide to crosstown traffic a direct route whereon crowded downtown streets may be avoided and relieved, to be made by widening, extending and opening streets so that Dix Avenue and Waterloo Street will be connected as shown by the map which is a part hereof, is hereby declared necessary in the municipality."

The other sections of such ordinance directed the proper officials of the city to take the necessary action to carry the purpose thereof into effect. On April 4, 1922, the common council of the city adopted a resolution referring to said ordinance, providing for the necessary condemnation proceedings, and concluding with the following provision:

"Resolved, That this body, said Common Council, does hereby declare that it is the inntention to assess part of the damages awarded in such proceedings upon a special or local district and does hereby fix such district, embracing only such real estate as in the opinion of this body will be specially benefited by the improvement, which district is described as including land in Detroit, Wayne County, Michigan," embracing the land of the plaintiffs here involved.

Thereafter the proper condemnation proceedings were had pursuant to law, and certain land, which did not include the said land of the plaintiffs, was thereby taken by the defendant city, under its power of eminent domain, for the purpose of widening, opening, and extending this highway. Damages were awarded, by the jury in said condemnation proceedings, to the owners of the land so taken, in the total sum of $4,556,400.39. Section 2 of chapter 1 of title 8 of the Charter of the City of Detroit, adopted pursuant to the statutes of the state of Michigan, contains the following provision, relative to condemnation proceedings for public improvements: "Before the institution of such proceedings, the council shall, if it be the inintention to assess part of the damages awarded in such proceedings upon a special or local district, declare by resolution such purpose and fix such district, embracing only such real estate as in its opinion will be specially benefited by the improvement." Section 15 of the same chapter includes the following provision: "The council shall by resolution determine whether the whole or any just proportion of the compensation awarded by the jury shall be assessed upon the owners or occupants of real estate contained in the assessment district already fixed and determined as hereinbefore provided, and the whole or any of such just proportion so determined shall be assessed upon the owners or occupants of such taxable real estate, in proportion, as nearly as may be, to the advantage which such lot, parcel or subdivision is deemed to acquire by the improvement. * * * Whatever amount or portion of such awarded compensation shall not be raised in the manner hereinbefore provided shall be assessed, levied and collected upon the taxable property of the municipality, the same as other general taxes are assessed and collected in such city." Section 1 of chapter 3 of title 6 of the Charter provides: "Whenever the common council shall ascertain the cost and expense of opening, widening, vacating, altering, straightening, extending or abolishing of any highway, street, alley, avenue or other thoroughfare or the construction of lateral sewer or drain, it shall thereupon cause such portion thereof as it may deem just to be equitably assessed against the lots or parcels of real estate to be benefited thereby in proportion to the probable benefit to be derived therefrom."

Section 4 of the same chapter provides as follows:

"Whenever the cost and expense of any lateral sewer or drain shall have been ascertained the city engineer shall prepare the proper assessment roll therefor. Whenever the cost and expense of any other local improvement shall have been ascertained, the board of assessors shall proceed to make out a list of all the lots or parcels of real estate, constituting the local assessment district, containing the name of the owner or occupant of, or parties in interest in each lot or parcel of real estate, so far as the board can ascertain the same, and a statement of the length of front of each lot or parcel of real estate, if the assessment shall be by length of front. The board shall then assess the cost and expenses of that portion of the local improve-

ment, herein required to be assessed against the property in the list, upon the several lots and parcels of real estate in the local assessment district, in accordance with such rules as the common council shall establish. The word 'front' as herein used shall be construed to mean that part of the lot or other parcel of land which directly abuts on that part of the street to be improved."

Pursuant to such charter provisions, on April 19, 1927, the city common council adopted the following resolution:

"Resolved, That the Common Council of the City of Detroit hereby determines that the sum of $2,278,200.20 is a just proportion of the compensation awarded by the jury for the property taken by the City of Detroit for the widening, extending and opening of streets so that Dix Avenue and Waterloo Street may be connected and thereby provide for cross-town traffic a direct route whereupon crowded downtown streets may be avoided and relieved, as a public street and highway, which should be paid by the owners or occupants of the pieces or parcels of real estate which will thus be benefited by said improvement, which said pieces or parcels of real estate are described in a resolution of the Common Council wherein the assessment district for this improvement was designated; and be it further

"Resolved; That there be assessed and levied upon said pieces or parcels of real estate included on said resolution above referred to, the amount of $2,278,200.20, as near as may be, to the advantage which each lot or parcel is deemed to acquire by such improvement; and be it further

"Resolved; That the Board of Assessors of the City of Detroit be and they are hereby directed and instructed to proceed forthwith to prepare an assessment roll in conformity with the requirements of the Charter of the City of Detroit relating to special assessments for collecting the expense of public improvements where a street is graded, comprising the property hereinbefore referred to and described in said resolution, upon which they shall assess and levy the amount of $2,278,200.20, each lot or parcel to be assessed at a ratable proportion as near as may be of said amount, in accordance with the amount of benefit derived by such improvement."

Thereupon the board of assessors of the city proceeded with the task of preparing the assessment roll thus ordered by the council and, after making various readjustments and changes in the percentages and methods of apportionment followed by it, prepared such an assessment roll on the basis of the division of the property affected into a series of assessment districts to all of which it allocated a certain part of the special assessment levied, apportioning such part among the lots in such district according to a certain percentage of the assessed valuation thereof, and, after finally determining such assessment roll, presented it to the council. Thereupon, on November 3, 1928, the said council formally approved and confirmed the said assessment roll by a resolution which included the following provisions:

"Resolved, That the description of the premises and the names of the persons contained therein are received as correct; that the lots and parcels of lands contained therein and the several owners and occupants have been assessed in said roll in proportion to the benefits specially derived by them and each of them from the opening and extending of said Vernor Highway; that the benefits of such improvement to such lots and parcels of land, and the several owners thereof, equal the assessment levied against the property contained in said assessment roll; that the benefits to the whole of the property included in the taxing district equal the sum assessed thereon, and that the sums set forth in said assessment roll are the correct ones which such lot or parcel of land should be assessed and pay."

It is to restrain the collection of the special assessment thus imposed upon their land, abutting on the said highway and embraced in one of the special taxing districts so created, that the plaintiffs brought this suit, as already stated.

█ 1. I am unable to agree with the contention of the plaintiffs that, because the primary purpose of this highway project was to provide a through, main thoroughfare across the city, and thus to benefit the general public in such city, it was solely a general improvement, as distinguished from a local improvement, so that entire cost must be defrayed from general taxes and no part of such cost could legally be assessed specially against the land abutting on such highway. The nature of a special assessment is too well understood to require discussion here. It was concisely stated by the Supreme Court in Illinois Central Railroad Co. v. Decatur, 147 U. S. 190, 198, 13 S. Ct. 293, 294, 37 L. Ed. 132, as follows: "Special assessments or special taxes proceed upon the theory that, when a local improvement enhances the value

of neighboring property, that property should pay for the improvement."

It is equally clear that when such an improvement produces a special benefit, other than the benefit received by the general public, to certain land in the vicinity of the improvement, the mere· fact that it also results in benefit to the general public, or even the fact that its immediate occasion or purpose was the creation of the general improvement project of which it is a part, does not deprive it of its character as a local improvement nor prevent the imposition of at least a portion of its cost as a special assessment against such land. Bauman v. Ross, 167 U. S. 548, 17 S. Ct. 966, 42 L. Ed. 270; Philadelphia v. Pennsylvania Salt Manufacturing Co., 286 Pa. 1, 132 A. 792; Peoria v. Peoria Railway Co., 274 Ill. 48, 113 N. E. 170; Leggett v. Plainfield, 97 N. J. Law, 341, 116 A. 490.

If, therefore, the improvement project here involved did specially benefit the land of the plaintiffs in question, it manifestly constituted a local improvement sufficient to justify the special assessment levied, notwithstanding the fact that it arose from a desire by the people of the defendant city to obtain the general benefits which also flowed from the highway improvement project of which it was, incidentally, a part.

 2. Whether a particular public improvement does result in special benefit, within the meaning of the applicable principle, to certain land, is, like the questions as to the amount of such special benefit and the proper basis and method of the apportionment thereof, committed to the judgment and sound discretion of the legislative tribunal of the state or municipality having charge of such improvement, and the decision of such tribunal will not be disturbed by the courts in the absence of a clear showing that such decision was wholly arbitrary, merely capricious, or actuated by fraud or bad faith. Bauman v. Ross, 167 U. S. 548, 17 S. Ct. 966, 42 L. Ed. 270; Phillip Wagner, Inc., v. Leser, 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230; Mt. St. Mary's Cemetery Association v. Mullins, 248 U. S. 501, 39 S. Ct. 173, 174, 63 L. Ed. 383; Hancock v. Muskogee, 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081; Milheim v. Moffat Tunnel Improvement District, 262 U. S. 710, 43 S. Ct. 694, 67 L. Ed. 1194; Power v. Detroit, 139 Mich. 30, 102 N. W. 288, 5 Ann. Cas. 645; Marks v. Detroit, 246 Mich. 517, 224 N. W. 619, 620. In the language of the United States Supreme Court in Mt. St. Mary's Cemetery Association v. Mul-

lins, supra, "It is well settled that unless such assessment is arbitrary and unreasonable the extent of the benefit, essential to justify the assessment, was a matter within the control of the local authorities." As was said by the Michigan Supreme Court in Marks v. Detroit, supra: "To what extent adjoining property is enhanced in value by the widening of a street is a question on which men may widely and honestly differ. It is a matter of judgment which the charter leaves to the common council and board of assessors and not to the courts. In the absence of fraud or bad faith or the following of a plan incapable of producing reasonable equality, their judgment must be held to be conclusive."

 It is urged by the plaintiffs and evidence was offered tending to show that the land in question, which is directly opposite a large public produce market daily frequented by crowds of dealers and their customers, has been, and is, used as a place for carrying on wholesale and other business in connection with such market, and that the conversion of this highway from a seldom traveled street. into a broad thoroughfare constantly filled with streams of fast-moving automobile traffic has seriously interfered with the conduct of the said business, preventing the parking and loading of vehicles at the curb, and deterring prospective customers from crossing over the said street as had previously been their custom; and the plaintiffs urgently insist that by reason of these conditions their land has been injured, rather than benefited, by the widening project for which they have been thus assessed. With this contention in mind, I have carefully considered all of the facts and circumstances disclosed by the record. I am, however, not satisfied that the evidence so clearly and unmistakably establishes the absence of special benefit to such land from this improvement as to overcome the presumptively correct finding of the officials of the defendant city to the contrary.

Moreover, it must be remembered that, in considering the question as to the presence of such special benefit, the particular purpose for which the land happens to be used at the time under consideration is not a controlling factor; the proper test being the effect which the public improvement involved may reasonably be regarded as having on such land in view of its general relations and usual uses. Louisville & Nashville Railroad Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819; Chicago v. Marsh, 250 Ill. 512, 95 N. E. 473. It cannot

be doubted that the usual, normal effect of the widening of a public highway is, or at least may reasonably be inferred and declared to be, to specially benefit land abutting thereon. Bauman v. Ross, 167 U. S. 548, 17 S. Ct. 966, 42 L. Ed. 270; United States v. River Rouge Improvement Co., 269 U. S. 411, 46 S. Ct. 144, 70 L. Ed. 339. Furthermore, the opportunity, fairly apparent, for such special benefit afforded by such improvement may be found, by the legislative tribunal concerned, sufficient on which to base a finding of the existence of such special benefit, without rendering such finding open to the objection that it is arbitrary or confiscatory. Louisville & Nashville Railroad Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819; Valley Farms Company v. Westchester County, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585.

I reach the conclusion that the determination of special benefit made by the municipal authorities in the proceedings here involved had sufficient basis to make it conclusive, and that the contention of the plaintiffs to the contrary cannot be sustained.

3. The argument of the plaintiffs to the effect that the provisions of the charter of the defendant city were not duly followed, in connection with the imposition of this assessment, appear to be, in substance and effect, a restatement, in somewhat different form, of the argument already discussed, that the findings of special benefit, and the method of apportionment of such benefit and its resultant assessment, were not supported by the facts, but were arbitrary, capricious, and unreasonable. With these arguments, as I have already indicated, I cannot agree.

The applicable charter provisions and the action taken pursuant thereto have hereinbefore been set forth. It is conceded by the plaintiffs that these provisions of the charter are constitutional, and no claim is made that they are in any respect in conflict with any state or federal law. Without repeating the conclusions already expressed, I think it clear that the proceedings taken by the municipal authorities fully complied with the requirements of the charter.

The fact that the board of assessors made several changes and readjustments in its percentages and other figures, in the course of its creation of the said special districts and in its preparation of said assessment roll, does not affect the correctness or validity of the assessment finally made, and the argument of the plaintiff to that effect is unten-

able. Butters v. Oakland, 263 U. S. 162, 44 S. Ct. 62, 68 L. Ed. 228.

Nor is there merit in the claim that because the common council, in referring to the benefit found by it, did not in every instance where the word "benefit" occurred in its resolutions expressly prefix thereto the word "special," such resolution did not constitute a sufficient determination of the necessary special benefit. It is obvious from the language used, when read and construed in its entirety and in connection with the clearly apparent object of the proceedings being taken, that the council was satisfied, and intended to declare and determine, that the improvement in question would result in special benefit sufficient to warrant the special assessment ordered; and there can be no doubt that the ordinance and resolutions adopted in this connection substantially and sufficiently complied with the applicable provisions of the city charter involved. Goodrich v. Detroit, 184 U. S. 432, 22 S. Ct. 397, 46 L. Ed. 627.

For the reasons stated, I conclude that the plaintiffs have not shown that they have sustained any legal injury in the premises and that they are not entitled to the relief prayed. A decree dismissing the bill of complaint for want of equity may be presented, together with such proposed special findings of fact and conclusions of law, not specifically expressed in this opinion or in said decree, as counsel may desire to have entered, pursuant to the new rule 70½ of the General Federal Equity Rules, which rule took effect October 1, 1930 (28 USCA § 723).