(No. 23565.—

THE HINSDALE SANITARY DISTRICT, Appellee, *vs.* THE HINSDALE GOLF CLUB *et al.* Appellants.

*Opinion filed June 17, 1936.*

BUNGE & BUNGE, (GUSTAV H. BUNGE, of counsel,) for appellants.

L. P. CONOVER, and WINSTON, STRAWN & SHAW, (JAMES H. CARTWRIGHT, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The Hinsdale Sanitary District on June 11, 1928, filed its petition in the county court of DuPage county to cause to be levied a special assessment to defray the cost of constructing an intercepting and outlet sewer in the district. The property of the appellants, Frank O. Butler, owner, and the Hinsdale Golf Club, lessee, was assessed for benefits in the proceeding in the aggregate amount of $11,233.15. The proceeding is identified in the record as Hinsdale sanitary special assessment No. 2. The appellants filed no objections to the assessment, and the county court entered an order confirming the assessment against the property, and all other property assessed for benefits in the proceeding, in the aggregate sum of $436,280.06. The appellee thereafter filed its certificate of cost and completion, showing a deficiency estimated to be the sum of $117,149.43. An order was entered approving that certificate. On April 11, 1932, the appellee filed a petition to levy a supplemental assessment to supply the deficiency in special assessment No. 2. It is designated as Hinsdale district supplemental assessment No. 4. The property of the appellants was assessed in the supplemental proceeding in the aggregate amount of $3016.31. The assessment was reduced to $1960.60. The appellants filed objections to this assessment. The case was previously before this court on an appeal from the judgment of the county court of DuPage

county as to legal objections. *Hinsdale Sanitary District* v. *Washburn,* 354 Ill. 240.

The Hinsdale Sanitary District is located in DuPage county and includes within its boundaries the villages of Hinsdale, Clarendon Hills and a portion of Westmont. The property involved in the objections consists of 133 acres of land west of the village of Hinsdale and within the corporate limits of Clarendon Hills. The Hinsdale Golf Club leased the tract from Butler for golf and country club purposes from January 1, 1909, to December 31, 1928. Before the expiration of the term, on June 30, 1917, a new lease was made extending the term to December 31, 1966, at a rental for the full term of $115,782.45. There were improvements on the leased premises of a total value of about $250,000. The annual maintenance of the club amounts to about $20,000. The club owns and maintains a sanitary sewerage system, including an outlet for the effluent from a septic tank on the grounds. The sewer constructed in pursuance of the original and supplemental assessments mentioned, commences at a point west of the westerly line of the golf grounds, thence extends southerly along the westerly line of the golf grounds for several hundred feet to Chicago avenue, which is the southerly line of the golf grounds. The sewer then proceeds along the southern line of the golf grounds for a distance of several hundred feet and then extends southeasterly to the eastern boundary of the district. In the village of Hinsdale the sewer connects with a main outlet sewer extending southeasterly to the disposal plant of the district. Most of the drainage of the golf grounds to the extent of about 110 acres is in a northeasterly direction and 23 or more acres drain southerly. Another outlet sewer was constructed by the sanitary drainage district in Ogden avenue under a special assessment proceeding designated as No. 3. It extends to Tenth street in Hinsdale, which is the eastern boundary line of the district. In this latter assessment the

total amount assessed against the appellants' property was $7398.82, which was reduced by the court to $3699.41. The golf club made one connection with the sewer in Chicago avenue to provide for any effluent from its septic tank.

The assessment to which the objections are made was based upon the theory that some time in the future the property would be subdivided. Two units of the golf grounds were considered as a basis for making the assessment—one constituting the portion draining northeasterly and the other which drains southerly. The portion of the property which had the use of the improvement from the treatment plant north and west to the limit of the district was assessed at approximately thirty cents per front foot, and that which had the use of the intercepting sewer to the county line in Hinsdale was assessed at approximately ten cents a foot. Witnesses on behalf of the appellants testified that the highest and best use of the golf grounds was for the operation of a golf club. One of these witnesses testified that he valued the property in 1928 at $1000 per acre, and that it was worth the same in 1931. Another witness testified that in 1929 the land was worth about $1500 per acre, but that the greens, fairways, trees, shrubbery and other items which make up the physical construction of the golf course were in excess of $5000 per acre in value; that the property would be worth approximately $15,000 more in 1931 than it was in 1928, because a golf course becomes more valuable with the addition of improvements and the improvement of the condition of the grounds, but that he did not believe the property had been benefited to any extent by the construction of the sewers provided for in special assessments Nos. 2 and 4, as the golf club already had a complete system of sewers prior thereto. In the opinion of the witnesses produced by the appellee the highest and best use of the golf property in 1929 and subsequent years was its sale at retail as subdivision property, and that its market value was increased by

reason of the improvement $150 an acre. The appeal here from the order assessing the property under the supplemental proceeding is on the theory that the property was not benefited and that the assessment should have been abated.

It is contended by counsel for appellants that the true test of the measure of the benefit which the improvement will confer is the increased value for the restricted use of the property, in the absence of any showing that another use of it is contemplated, and that the court should have held that the property could not be subdivided without the consent of the owner. Counsel for appellee contend that a private voluntary agreement between the owner of the land and the club to create and maintain a golf course thereon does not preclude an assessment for benefits which accrue to it for its highest and best use, namely, subdivision purposes.

Certain cases are cited by counsel for appellants in support of their contentions, but in each of those cases there is wanting the independence of the owner, or an owner and his lessee, to presently use the land as desired, free from any public or quasi-public rights or other restrictions imposed by grant or law. In this State it is the settled rule that property which is restricted by statute or grant to a particular use cannot legally be applied to any other use, and the true measure of the benefit which an improvement will confer upon such property is the increased value for the restricted use, in the absence of evidence reasonably tending to show that the property, having regard to present conditions and the existing business and wants of the public, is about to be devoted to other uses. (*Village of Bensenville* v. *Chicago, Milwaukee and St. Paul Railway Co.* 316 Ill. 352; *City of Chicago* v. *Rose Hill Cemetery Co.* 285 id. 567; *City of Chicago* v. *Chicago and Northwestern Railway Co.* 278 id. 86; *City of Lincoln* v. *Chicago and Alton Railroad Co.* 262 id. 11; *Chicago Union Trac-*

*tion Co.* v. *City of Chicago,* 202 id. 576; *Illinois Central Railroad Co.* v. *City of Chicago,* 141 id. 509.) If the land is owned by a private person or private corporation and is devoted to private use, the general rule is that the right to assess such land is not restricted by the fact of a special or peculiar use; that the peculiar use being merely voluntary, it may be changed at will and the owner or owner and lessee thus obtain the benefit accruing from the improvement. *City of East St. Louis* v. *American Asphalt Roof Corp.* 331 Ill. 58; *City of Chicago* v. *VanSchaack Bros. Chemical Works,* 330 id. 264; *Chicago Union Traction Co.* v. *City of Chicago,* 204 id. 363; *Clark* v. *City of Chicago,* 166 id. 84; *City of Lincoln* v. *Chicago and Alton Railroad Co. supra; Illinois Central Railroad Co.* v. *City of Chicago, supra.*

Counsel for the appellants cite *City of Chicago* v. *Farwell,* 286 Ill. 415, which was a condemnation case, as authority for their contention that the golf club in this case is within the same rule applicable to a railroad, cemetery or other institution which may not change the use of its property, and because of which fact it is entitled to have the property held exempt from special assessment or the benefit confined to the special use to which the property is devoted. The reply brief quotes from the decision to show what constitutes market value, and that there are exceptional cases, such as the property of a church, college, cemetery, club house or terminal of a railroad, which has no market value, and the law permits resort to evidence of another character to prove value. The rule stated in the case cited is not inconsistent with that applicable here. The constitution provides that private property shall not be taken or damaged for public use without just compensation, and in condemnation proceedings the land taken is to be valued at its highest and best use as shown by the evidence. And this is true even though the property owner may not at the time of the trial be putting the property to

such use. (*Southwest Chicago Drainage District* v. *Mc-Mahon*, 329 Ill. 478.) The basis for determining benefits accruing from the construction of an improvement is not restricted to actual use, except where such restricted use is prescribed by law or grant and is beyond the owner's power to change. Where the use is private and voluntary, the highest and best use for which the property is available is the measure of the benefit accruing from the improvement.

Counsel for the appellants argue that because of the lease here the use of the land as a golf club is fixed until the end of the term of the lease. There may be a binding lease between the owner and the lessee, but that is not a sufficient reason to exempt the property as for a restricted use, such as is imposed by the law. The measure of benefits conferred upon lands leased under a voluntary agreement is not limited to the increase, if any, in the value of the land for the special use provided in the lease. *Chicago Union Traction Co.* v. *City of Chicago, supra.*

One of the authorities cited by counsel for the appellants is *City of Chicago* v. *Wells*, 236 Ill. 129. It holds that an owner's property cannot be subdivided without his consent and then assessed as subdivided property. There is a distinction between actually subdividing and then assessing property and merely assessing it for its highest and best use, which use is shown by evidence to be for subdivision purposes. There was no attempt by the appellee to subdivide the property of the appellants in this case.

On the review of a case of this kind, the jury's verdict, approved by the trial judge, or the trial court's finding, will not be disturbed unless it is palpably against the weight of the evidence. (*City of East St. Louis* v. *American Asphalt Roof Corp. supra.*) The finding of the county court was not palpably against the weight of the evidence, and as there is no reversible error disclosed by the record the judgment is affirmed.

*Judgment affirmed.*