The relator, a railroad corporation, resists as illegal a local improvement assessment against a strip of land, used exclusively for its right of way, imposed by the respondent town officers to meet the cost of a sanitary sewer. A reduction is also sought in a separate assessment for the same local improvement against the relator's railroad yards, upon the ground that only a portion of the land assessed will be benefited thereby.
The imposition of a tax or assessment is an act of sovereignty to be exercised by a municipal body only when delegated by the Legislature. (Matter of Long Island R.R. Co. v. Hylan,240 N.Y. 199, 206; County Securities, Inc., v. Seacord, 278 N.Y. 34,37.) Such a delegation of power to the respondents is found in subdivision 2 of section 202 of the Town Law (Cons. Laws, ch. 62): "The expense of constructing every trunk sewer or drainage system in a district created pursuant to section one hundred ninety * * * shall be borne by local assessment upon the several lots and parcels of lands which the town board shall determine and specify to be especially benefited by the improvement, and the town board shall apportion and assess upon and collect from the several lots and parcels of land so deemed benefited, so much upon each as shall be in just proportion to the amount ofbenefit which the improvement shall confer upon the same." (Emphasis supplied.) *Page 347 
Considering the jurisdiction of a Town Board under a similar statute this court has said: "The local authorities, upon whom the duty of preparing the assessment rolls rests, have jurisdiction to determine the amount of the benefit which will be derived; but where there is no benefit there can be no assessment." (People ex rel. D., L. W.R.R. Co. v. Wildy,262 N.Y. 109, 111.)
In view of the relator's concession that a portion of its railroad yards may derive a benefit from the sanitary sewer which is the subject of the assessment here in suit, the question of the extent of that benefit is not one of law within the jurisdiction of this court. It is a question of fact for determination by the respondents. (People ex rel. D., L. W.R.R. Co. v. Wildy, supra, p. 112.)
A different problem is presented, however, by the challenge to the respondents' jurisdiction to assess against a segment of the relator's right of way the cost of a sanitary sewer. Upon such a challenge our inquiry goes to the question whether "* * * the railroad's right-of-way is so used that it gives evidence of a permanent user for railroad purposes * * *." (N.Y.C. H.R.R.R.Co. v. City of Yonkers, 238 N.Y. 165, 173; People ex rel. D.,L. W.R.R. Co. v. Wildy, supra, p. 112.) Is the exclusive use, to which it is devoted "* * * in all probability permanent and * * * inconsistent with the idea of any benefit from such an improvement?" (Matter of City of New York [Juniper Ave.],233 N.Y. 387, 392. Cf. Matter of Long Island R.R. Co. v. Hylan,supra, pp. 204, 207.)
On April 1, 1873, The New York Central and Hudson River Railroad Company, the relator's corporate predecessor, leased for a term of four hundred and one years the right of way, yards, equipment and all railroad property of The New York and Harlem Railroad Company, now commonly known as the relator's Harlem Division. Under the terms of that lease the relator will be required to surrender the railroad to its lessor on April 1, 2274, "with a perfect track, and all proper depots, stations, shops, grounds, buildings, structures, etc., and in as good state and conditions and of as much value in all respects" as when the lease was executed on April 1, 1873. *Page 348 
The respondents have imposed an assessment of $76,500 upon a strip of land comprising a total area of 11.06 acres which extends approximately 5,600 feet from the city line of White Plains northerly to the Mount Pleasant town line. This land became an integral part of the right of way of The New York and Harlem Railroad Company on June 1, 1847. Since that time it has been used exclusively as the right of way for that railroad, the tracks of which extend into New York city and furnish the only entrance to the Grand Central Terminal for the entire New York Central system.
It is important to our present inquiry to note that there are in daily operation in both directions over this particular section of relator's right of way in the town of North Castle forty-six passenger trains and ten freight trains. There is also evidence, which is not disputed, that there have been no plans in the past, nor are there plans at present, to curtail either passenger or freight service over this portion of the right of way.
Upon the question of benefit to the relator's right of way to be derived from the sewer system which gives rise to the assessment, it appears that restrictions were inserted in the permit therefor issued by the State Department of Health which make the sewer legally unavailable for the disposal of storm water or surface water which may collect along the relator's right of way. (Town Law, § 192; Public Health Law [Cons. Laws, ch. 45], §§ 76, 77.) The permit provides: "That only sanitary or domestic sewage and no storm water or surface water from streets, roofs or other areas shall be admitted to the proposed sewer system."
These facts of record prompt us to repeat here the statement by Judge ANDREWS writing for this court when it considered a problem with similar features presented by Matter of City of New York
(Juniper Ave.) (supra, p. 392): "But in one case, and one only we have said that the opening or widening of a street cannot as a matter of law be of benefit — where a railroad occupies a strip of land for its right of way. (N.Y., N.H. H.R.R. Co. v.Village of Port Chester, 149 App. Div. 893; affd., 210 N.Y. 600. ) Such land is used permanently by the railroad corporation *Page 349 
in its operation. As a practical matter it may not be severed from other property and sold. It is a highway devoted to public travel. (Allegheny City v. W.P.R.R. Co., 138 Penn. St. 375.)"
Opposed to this view and in support of the assessment here in question it is suggested that the advent of automobiles, motor omnibuses and motor trucks has wrought a change in the means of transportation which has already caused the abandonment of railroads and may have a like effect upon the relator's operation of its Harlem Division. In that event, we are told, the land now used exclusively as a railroad right of way and subject to the assessment here involved, may be sold for residential purposes, factory sites or put to a use in which the availability of a sanitary sewer would enhance the land value.
We cannot rest our decision upon a suggestion so fraught with speculation. Upon the present record we are dealing with an assessment for the cost of a sewer, available only for sanitary and domestic sewage, against a narrow strip of land used exclusively as a right of way for a railroad which has been operated for more than ninety years and is today serving the New York metropolitan area under a lease which has an unexpired term of more than three hundred years, with no plans contemplated for the curtailment of either passenger or freight service. Confining our ruling to those particular circumstances the suggested possibility that the relator's right of way may be abandoned for railroad purposes and that thereafter it may possibly be put to some other use in which the proximity of the sanitary sewer here involved may be of benefit, is illusory — too remote and conjectural for consideration as a basis for an assessment against the land as "especially benefited" within the terms of the statute from which the respondents' authority is derived.
"Attempted action of a public body without power is void and may be attacked for want of jurisdiction at any time when an attempt is made to enforce claims founded upon such action." (Matter of Long Island R.R. Co. v. Hylan, supra, p. 208.) *Page 350 
The orders should be modified in accord with this opinion and, as so modified, affirmed, without costs.
LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.
Ordered accordingly.