No. 45,129

STATE, *ex rel.*, ROBERT C. LONDERHOLM, Attorney General, *Appellant,* v. THE CITY OF TOPEKA, a Municipal Corporation, and CHARLES W. WRIGHT, JR., Mayor; FRANK MANSPEAKER, Water Commissioner; JOHN GOODIN, Park Commissioner; ABE COX, Street Commissioner; and KENNETH P. KERN, Finance Commissioner, constituting the City Commission of the City of Topeka; and WILLIAM M. DOUGLASS, City Clerk of the City of Topeka, *Appellees.*

(443 P. 2d 240)

Opinion filed July 13, 1968.

*Richard E. Oxandale,* Assistant Attorney General, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Park McGee,* Assistant Attorney General, were with him on the brief for the appellant.

*Donald S. Simons,* Assistant City Attorney, argued the cause, and *John W. Lewis,* City Attorney, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: The sole question presented by this appeal is whether state-owned land is subject to special assessment by the

city of Topeka for the purchase of land to create a public park. The park was created pursuant to authority conferred in K. S. A. 13-2518, 13-2519, 13-2543 and 13-2544.

The appeal is from an order of the district court of Shawnee County, Kansas, denying the state's petition for injunctive relief against the assessment, levy and collection of a portion of the cost of establishing the park against state property situated within the park district.

The matter was tried to the court on a stipulation of facts.

The state land within the park district is the old Kansas Technical Institute grounds located on East Sixth Street in the city of Topeka. At the time this suit was instituted the state land was devoted to the following uses:

". . . (a) Kansas Reception and Diagnostic Center, a maximum security penal institution established by K. S. A. 76-24a01 et seq.; (b) warehouse for the surplus section of the Kansas Department of Administration, which department was created under K. S. A., Ch. 27, Art. 3, and authorization for this activity is contained in Ch. 14, Laws of Kansas 1957; (c) storage of official records of various agencies, departments and offices of plaintiff State of Kansas in warehouse buildings; (d) sign shop of the Kansas Highway Commission on land which has been assigned to that agency but which is under the general management and authorization of the State Architect, under authority of K. S. A., 1965 Supp., 75-3765."

The Kansas legislature in the 1966 budget session authorized expansion of the facilities of the Kansas Reception and Diagnostic Center; and since the filing of this action plans have been made by the state architect and the state board of health to construct laboratory facilities for the state board of health on the state land in question.

The governing body of the city of Topeka, having created a park district under K. S. A. 13-2518, determined that the park district should be a benefit district to pay the total portion of the city's costs for acquiring the site for a park to be known as Rice Neighborhood Park. Having paid for the actual purchase of the land out of the city park land acquisition fund, the city commissioners proceeded to spread this cost on all land located within the park district, including the state land in question, on a square footage basis.

In making the levy against the state property the city determined that all land within the benefit district, including the state land, benefited equally from the establishment of the park.

It was specifically stipulated that:

"Any use of this park by plaintiff in connection with the use of its land which is the subject of this attempted assessment is remote and speculative. The existence of this park will not make that land of the plaintiff located in the park district any better for any of the uses to which it is presently being devoted or for any use to which in all probability it will be devoted in the foreseeable future. Inasmuch as the State of Kansas is the fee owner, the land may be used or disposed of according to the will and determination of the legislature, but at the present time there is no indication that the land might, in the foreseeable future, be disposed of or utilized for any purpose different in nature from the present uses."

It was also stipulated that the state property was assessed in the amount of $3,334.96; that if the state land upon which such assessment was based were held by private parties, and not the state, the land would be benefited equally with other land located within the park district.

The parties further stipulated that:

"The Board of Commissioners of the City of Topeka is a legislative body and the repository of all legislative authority insofar as the City of Topeka is concerned, except as may be limited by statute or the State and Federal Constitutions."

In the instant case the state raises no error or irregularity regarding the procedural aspects undertaken by the board of commissioners of the city of Topeka establishing Rice Neighborhood Park. The parties defined "procedural" to mean "the following of the proper statutory authority, the matter of hearings and notices thereof, and the passing of resolutions and ordinances in the premises."

The trial court in its memorandum opinion concluded:

". . . The land belonging to the State or its agencies is properly within the benefit district and should pay its fair share. It is the *land* itself which has been benefited without regard to the present or contemplated use of the property. The rate and method of assessment used is reasonable and logical on a basis of two cents per square foot. There has been no showing of arbitrary or capricious conduct by the commissioners of the City of Topeka. The question of benefits to the land of the State is a matter on which reasonable men may differ but fraud or capricious or arbitrary action on the part of the defendants has not been established."

For the foregoing reasons the trial court denied the injunction requested by the state and entered judgment in favor of the city.

The appellant states the question to be whether land of the state which is not presently benefited and will not in any foreseeable

future time or use be benefited by the existence of a public park should bear the cost of the establishment of such park.

The appellant concedes if the land in question were devoted to other uses by other owners, it would benefit from the existence of the park. However, it is argued, such change of ownership and use depends upon legislative action which is not presently pending or contemplated so far as the parties can determine.

The specific question presented is one of first impression in this state.

K. S. A. 13-2544 is statutory authority for the special assessment presently under attack by the state. It is relatively new, appearing for the first time as chapter 103 of the Laws of 1963. In pertinent part it provides:

". . . the cost of acquiring such land may be paid from the park land acquisition fund and the governing body of the city may levy a tax against the property located within such district and benefiting therefrom, in an amount not to exceed the cost of acquiring such land and may reimburse the park land acquisition fund by crediting the proceeds of such levy in such fund."

Recent public park legislation in Kansas is in keeping with the philosophy of the times; promulgated in part at the federal level, such as land beautification and land reclamation, but primarily prompted by the philosophy that our citizens with more leisure time need additional recreational facilities. We are informed the federal government participated in the acquisition of the park land presently in controversy by paying thirty percent of the cost of the land, leaving the balance of seventy percent to be paid by special assessments against the landowners within the district.

The legislature has conferred upon cities of the first class having a population of more than 50,000 inhabitants (K. S. A. 13-2512) the discretion and power to establish, acquire and maintain public parks, and for that purpose has given them discretion to divide the territory within the corporate limits of such city or any part thereof into park districts. (K. S. A. 13-2518.) Where the precedent conditions have been met, the legislature has made it the duty of the board of commissioners of the city to maintain at least one park in each district and to purchase or otherwise acquire, if necessary, real estate therefor and improve the same. (K. S. A. 13-2519.) It further authorized the board of commissioners of the city to establish a park land acquisition fund to be used for the purpose of paying the cost of acquiring land for park purposes. (K. S. A. 13-2543.)

It may therefore be said the legislature has given such cities exclusive control of the creation, establishment and improvement of public parks, and a court should not substitute its judgment for that of the governing body of the city where it acted fairly and in good faith. Courts do not enjoin the action taken by a city government except in a clear case where there has been an abuse in the exercise of discretion. That is, where the governing body acted arbitrarily, capriciously, unreasonably or in bad faith constituting fraud. (*Giddings v. City of Pittsburg*, 197 Kan. 777, 421 P. 2d 181.)

In 1964 this court in *State Highway Commission v. City of Topeka*, 193 Kan. 335, 393 P. 2d 1008, was confronted with a question as to whether or not state-owned property could properly be assessed for a storm sewer constructed by the city of Topeka, and it was held that certain land owned by the state highway commission within the city of Topeka could be assessed for such improvement. In the opinion the court distinguished general property taxes from special assessments, saying:

"A special assessment is in the nature of a tax levied upon property according to the benefits conferred on the property. The whole theory of a special assessment is based upon the doctrine that the property against which it is levied derives some special benefit from the improvement; that while the property is made to bear the cost of the improvement, it or its owner suffers no pecuniary loss thereby since the property is increased in value by an amount at least equal to the sum it is required to pay. Generally speaking, the difference between a special assessment and general taxes is that a special assessment can be levied only on land, is based wholly on benefits conferred, and is exceptional both as to time and locality. . . .

"The power of cities to make property liable for special improvements is found in the statutes. Despite the fact that none of them specifically provide that public property will or will not be subject to special assessments, this court has held that public property is liable for such assessments without an express declaration to that effect in the statutes. . . ." (pp. 337, 338.)

Further in the opinion the court said:

"Contrary to the forceful argument of counsel for the Commission that state property is not liable for special assessments unless the statute authorizing the same specifically authorizes their levy, we adhere to our holdings that Article 11, Section 1 of our Constitution has no application to special assessments, and that an exemption of property of the state, county and municipalities from 'taxation' does not carry an exemption from special assessments for public improvements. Running through our decisions is the holding that public property is liable for special assessments for public improvements and this can only be overcome by a positive declaration in the statutes that the public property shall not be liable therefor but that the costs will be borne by the city at large. This is true despite the fact that there are no provisions

for the placing of property of the state or its agencies on the tax rolls or for collections against it or subjecting it to any penalties, or that no provision is made whereby the city of Topeka could enforce collection of its special assessment against the Commission. While real property of the Commission cannot be sold under any tax proceeding or foreclosure sale for special assessments levied thereon, it is always presumed that state officials will act in the utmost good faith and comply with the law, and that the Commission will arrange and provide for payment of the special assessment without any action or other legal proceedings being necessary." (p. 339.)

In conclusion the court held:

". . . we are of the opinion that under our Constitution and statutes as interpreted by this court, cities have the power to levy special assessments upon state property necessary for the particular public improvement unless the statute authorizing the same specifically provides that state property shall be exempt therefrom, or that when extended along or upon state property, the costs thereof shall be borne by the city at large." (p. 340.)

The state says the facts in the instant case are distinguishable from *State Highway Commission v. City of Topeka,* supra; and relies upon *Hurley v. Board of County Commissioners,* 188 Kan. 60, 360 P. 2d 1110. From the *Hurley* case the state argues the special assessment must bear a relationship to the benefits conferred and where there is no present or foreseeable benefit, there can be no assessment of cost.

Any solace the state acquires from *Hurley* requires the injection of an additional fact—that there is no present or foreseeable benefit to the property *because it is owned by the state.*

Without reviewing the *Hurley* decision in detail, the board of county commissioners there found the landowners' property was "benefited equally" with all other lands within the sewer district by the construction of a main trunk sewer line. At the suit of certain landowners to enjoin the special assessment it was held, upon the undisputed evidence in that case, that such finding was not supported by the evidence; that on the facts the assessment was unjust, unreasonable, discriminatory and grossly disproportionate to the benefits received; and that the trial court erred in denying injunctive relief. In the opinion it was said:

"As abstract academic propositions, the correctness of defendants' contentions perhaps may be conceded. It also is conceded that ordinarily courts do not, and should not, 'second guess' administrative bodies, such as a board of county commissioners, in a matter of this kind. On the other hand, while the right of the legislature to enact the above-quoted provision pertaining to assessment on an area basis is not questioned—it by no means follows that the board's finding of an equality of benefits is conclusive—for whatever method

may be adopted for the apportionment and assessment of benefits from special improvements, it must be just and equitable, and if palpable injustice results from its application equity will step in and grant relief. (*Railroad Co. v. Abilene*, 78 Kan. 820, syl. 6, 98 Pac. 224.)" (p. 65.)

In the instant case the state argues the possibility of discontinuing the present uses of the state's land in this park district in the city of Topeka, and the sale of the land to some private individual in whose hands it would be benefited equally with other land in the park district, is so contingent, remote and speculative that a special assessment against the land in the hands of the state devoted to the present uses is unreasonable and should be enjoined.

It must be conceded there are no Kansas cases directly in point, and cases which have decided the question in other jurisdictions are conflicting. The state relies upon cases from other jurisdictions holding that special benefits from an improvement in the area must be determined with respect to the present and continuing use of the state land, and where the exclusive use to which the property is devoted is in all probability permanent, and there is no suggestion of any contemplated abandonment, the state land is not subject to assessment for the cost of that improvement, unless it is specially benefited. (Citing, *People ex rel. N. Y. C. R. R. Co. v. Limburg*, 283 N. Y. 344, 28 N. E. 2d 865; *M. & P. R. Co. v. Nice*, 185 Md. 429, 45 A. 2d 109; *Hinsdale Sanitary Dist. v. Golf Club*, 363 Ill. 595, 2 N. E. 2d 921; *City of San Diego v. Atchison, Topeka & Santa Fe Ry. Co.*, 45 F. 2d 11 [9th Cir. 1930] cert. den. 283 U. S. 830, 75 L. Ed. 1443, 51 S. Ct. 364; *Northern Pacific Terminal Co. v. City of Portland*, 80 F. 2d 738 [9th Cir. 1935]; *City of Barre v. Barre & Chelsea R. R. Co.*, 97 Vt. 398, 123 Atl. 427, 37 A. L. R. 207; and see, also, 63 C. J. S., Municipal Corporations, § 1372, p. 1130.)

The city takes the position that the ownership of the land does not have and should not have any bearing on the propriety of including it within the benefit district. It is argued the land itself, regardless of its ownership or use, is benefited and whether that owner wishes to avail himself of the improvement is immaterial.

Under prior Kansas decisions the fact that the property involved is not presently being used in such a manner that it might benefit from the proximity of the improvement is not controlling. Benefits from the improvement may arise not only from use, but also from the availability for use. (*Johnson County Comm'rs v. Robb*, 161 Kan. 683, 171 P. 2d 784.)

The foregoing principle was recently reiterated in *Mullins v. City of El Dorado*, 200 Kan. 336, 436 P. 2d 837, where the court said:

"It is a matter of common knowledge that a sewer system ordinarily enhances the value of the property it is designed to serve. Additionally, in many instances the installation of a sewer greatens the opportunity for development of the property into a higher and better use. While present use may properly be considered in determining benefits, it is not controlling. *The property must be considered in its general relation to other properties in the assessment district regardless of present use. The benefit from the improvement is presumed to inure to the property itself rather than to the particular use being made of it at the time.* (48 Am. Jur., Special or Local Assessments § 23.) *Thus, the test is not whether the property is enhanced in value for the particular purpose to which it is devoted at the time of assessment but whether it is enhanced in value for any purpose.* (See, *Village of Edina v. Joseph,* 264 Minn. 84, 119 N. W. 2d 809.)" (p. 345.) (Emphasis added.)

Other jurisdictions have taken a similar position. Thus, in *In Re Public Service Electric and Gas Co.*, 18 N. J. Super. 357, 87 A. 2d 344, it was said the broad question is whether the general value of the property has been enhanced, not whether its present owner receives an advantage.

In the opinion the court said:

". . . In determining whether property has been benefited, the question is whether the market value of the property has been increased by the improvement and it is not confined to benefits conferred for the particular use it is being devoted to at the time. . . ." (p. 364.)

The federal rule was enunciated in *Posselius v. City of Detroit*, 44 F. 2d 395 (E. D. Mich. 1930) as follows:

". . . it must be remembered that, in considering the question as to the presence of such special benefit, the particular purpose for which the land happens to be used at the time under consideration is not a controlling factor; the proper test being the effect which the public improvement involved may reasonably be regarded as having on such land in view of its general relations and usual uses. . . ." (p. 398.)

The nature of a pubic park is to provide recreational facilities in a certain geographic area. The legislature by enacting 13-2544, *supra*, did not intend that land to be assessed must abut the improvement, but rather made it discretionary with the governing body to establish the area of the benefit district. The method of assessment chosen by the city of Topeka in the instant case, two cents per square foot, is reasonable and logical. It is within the guidelines of *Gilmore, County Clerk, v. Hentig*, 33 Kan. 156, 5 Pac. 781.

We hold the present or foreseeable use of the state land in the park district here under consideration is not controlling in deter-

mining whether the state property is benefited. The benefit from the improvement is presumed to inure to the property itself rather than to the particular use being made of it at the time. The test is not whether the state property is enhanced in value for the particular purpose to which it is being devoted at the time of the assessment, but whether the property is enhanced in value for any purpose.

Since the decision in *State Highway Commission v. City of Topeka,* supra, holding that cities have power to levy special assessments upon state property for public improvements within a benefit district, unless the statute authorizing the same specifically provides that the state property shall be exempt therefrom, the legislature has not seen fit to change the rule of that case by making state property exempt from special assessments for public improvements.

The state has failed to show the city governing body in making the assessment against the state property herein acted arbitrarily, capriciously, unreasonably or in bad faith constituting fraud. Thus, the land belonging to the state or its agencies located within the benefit district of Rice Neighborhood Park in the city of Topeka is subject to special assessment for its fair share of the cost of the park.

The judgment of the lower court is affirmed.

FONTRON, J., dissenting: For reasons briefly hereafter set out, I respectfully dissent from the majority opinion which rejects what to me appears the more logical and better reasoned rule followed in a majority of jurisdictions.

The general rule which I believe applies to the factual situation presented in this case is found in 63 C. J. S. Municipal Corporations, § 1372, pp. 1131, 1132:

"In order to render property liable for special assessments for local improvements, it must be capable of actual enhancement in value in consequence of the improvement, and it must be possible to measure the extent of the benefit with reasonable accuracy.

"Land, the use of which is restricted by statute or grant to a particular purpose, and which is in fact so used, must be assessed not on the basis of enhancement of market value, or with reference to uses for which it is reasonably adapted, but only on the basis of increased value, if any, to the land for the use to which it is put. . . ."

In my view, the stipulated facts bring this case squarely within the scope of this rule. The land in question has long been used for public purposes, being occupied for many years by the Kansas Vocational School (Topeka) the name of which was changed, in 1951,

to the Kansas Technical Institute (Topeka). Ever since the Kansas State Reception and Diagnostic Center was established by act of the legislature in 1961, the Center has occupied the buildings and grounds of the former institute along with other state agencies mentioned in the Court's opinion.

As shown on page 3 of the Court's opinion, the parties stipulated that the park will not make the state's land, within the park district, any better for any of the uses to which it is now being devoted, or for any use to which in all probability it will be devoted in the foreseeable future; and that there is no indication that the land might, in the foreseeable future, be disposed of or utilized for any purpose different in nature from the present uses. The prophetic accuracy of the stipulation is borne out and given emphasis by legislative action taken at the 1966 budget session authorizing expansion of the facilities of the Reception and Diagnostic Center and by plans of the state architect to construct laboratory facilities for the state board of health on the land.

In the face of the stipulation entered into by the parties, and in view of the well known disposition of government to expand rather than contract its operations, a fact of which judicial notice might well be taken under K. S. A. 60-409($a$), how can it be said that the state's land is benefited by this park, which we were informed by counsel for the city is some three or four blocks away.

The majority opinion speaks of the modern philosophy that our citizens need additional recreational facilities to absorb their ever expanding leisure time. But the creation of a park for recreational or even social purposes does not enhance the value of the state's land as it is used now and will be used in the foreseeable future. The prisoners confined in the Reception and Diagnostic Center, which is a maximum security penal facility, will hardly be spending their leisure hours among the beauties which the park may provide. Nor is it likely that the park will be an appropriate area in which to carry on supplemental warehousing, storage and other state operations.

As I see it, the only possible way for the state's land to be helped by this park would be through an enhanced market value for private residential or industrial purposes. But the stipulation rules that sort of a benefit out, for the foreseeable future. That this state land, used as it is for multiple public purposes, and with permanent structures, will ever be disposed of so that it can revert to private

use, is speculation of the purest kind. The observation of the Maryland Supreme Court in *M. & P. R. Co. v. Nice,* 185 Md. 429, 45 A. 2d 109, where special assessments had been levied against a railroad right of way, is germane at this point:

". . . the possibility that a railroad right of way might be abandoned at some future time and the land thereafter put to some different use, for which the paving might enhance its value, is too remote and conjectural to be considered as a basis upon which to predicate an assessment against the land." (p. 436.)

Great reliance is placed by the Court on *State Highway Commission v. City of Topeka,* 193 Kan. 335, 393 P. 2d 1008, but that case is readily distinguishable. The Highway Commission case involved assessments levied for a storm sewer against the Highway Commission's land used for Division Headquarters and Shops. An improvement of that character would benefit the land, itself, by way of drainage. As this court said in the opinion, it cannot be doubted that the benefits flowing from a system of drainage would reasonably be incident to the Commission's use of the property in its operation of the state highway system.

Thus the Highway Commission case furnishes no precedent for the Court's present decision. It is not possible, in my judgment, to equate the benefits resulting to land from the construction of a storm sewer with those flowing from a park three or four blocks distant. In all sincerity, I have grave doubts that a park can be said to benefit the land, as land itself, even though it may enhance the desirability of a community as a place in which to live.

The majority opinion also cites our recent decision in *Mullins v. City of El Dorado,* 200 Kan. 336, 436 P. 2d 837. That case also involved assessments for the construction of a sewer, a sanitary sewer, and hence the factual situation was entirely different from that now before us. Moreover, the land assessed in that case was owned privately and was in an area where residences and small businesses were located. Market value could be of definite importance to the landowners affected there, for the sale of the lots involved could be envisioned as a distinct possibility in the foreseeable future.

I would reverse this case with instructions to enter judgment for the plaintiff.