**MAVERICK COUNTY WATER CONTROL & IMPROVEMENT DISTRICT #1 et al., Appellants,**

v.

**The STATE of Texas, Appellee.**

No. 14854.

Court of Civil Appeals of Texas, San Antonio.

May 13, 1970.

Rehearing Denied June 24, 1970.

---

David Hume, G. A. Flores, Jeremiah I. Rhodes, Eagle Pass, Graves, Dougherty, Gee, Hearon, Moody & Garwood, Robt. J. Hearon, Jr., Austin, for appellants.

Crawford C. Martin, Nola White, Pat Bailey, Meade F. Griffin, Houghton Brownlee, Jr., W. Scott Garrison, Austin, for appellee.

Greenwood & Russell, Harlingen, for intervenors.

CADENA, Justice.

Defendants, Maverick County Water Control & Improvement District No. 1, Eagle Pass Independent School District and Maverick County, appeal from a judgment declaring that certain land owned exclusively by the Veterans' Land Board, an agency of the State of Texas, is "free of all liens and claims for taxes or other charges * * * made, levied or assessed" by defendants. The "other charges" referred to in the judgment below consist of assessments and water delivery charges made by defendant Water District, apparently under authority conferred by Articles 7880–109 and 7880–147z.[1]

Article 3, Sec. 49–b of the Texas Constitution, Vernon's Ann.St., authorizes the Veterans' Land Board to use funds realized from the sale of bonds which are obligations of the State of Texas to purchase land for resale to veterans who served in the armed forces of the United States of America during specified periods. The legislative enactment implementing the constitutional provision is Article 5421m.

In accordance with prescribed procedures, the Land Board acquired the land in question in May, 1954, and on June 16, 1954, executed a contract agreeing to convey the land to Jack W. Shaw, an eligible veteran. The contract provided that title to the land should remain in the Land Board until the veteran paid to the Board the amount of the purchase price of the land, with interest, in installments extending over a forty-year period. The veteran failed to make the required payments, and the Board declared his rights under the contract forfeited in 1962. Since such forfeiture, the Board has held the full legal and equitable title to the land. The trial court's judgment declares the land free from taxes and other charges levied by defendants after the rights of the veteran under the contract of sale were terminated.

Sec. 4 of Article 7150 declares that all property "belonging exclusively to this State, or any political subdivision thereof, * * *" is exempt from taxation. This blanket exemption from taxation of all property owned exclusively by the State of Texas or any of its political subdivisions is a valid exercise of legislative power. City of Beaumont v. Fertitta, 415 S.W.2d 902

---

1. All statutory references are to Vernon's Ann.Tex.Civ. Statutes.

(Tex.Sup.1967).[2] After the forfeiture of the veteran's rights under the contract of sale, the entire interest in the land was owned by the State of Texas. After such forfeiture, the land was, and continues to be, property "belonging exclusively to this State" and, under the clear language of Article 7150, exempt from taxation.

Defendants contend that Fertitta involved land belonging to a municipality, and point out that the Veterans' Land Board is not a municipality and that, therefore, Fertitta is not controlling. We are unable to understand how language exempting from taxation land "belonging exclusively to this State, or to any political subdivision thereof" can be construed as protecting land owned exclusively by political subdivisions of the State while it leaves land owned exclusively by the State subject to taxation.

We cannot agree with defendants' contention that in holding that land "belonging exclusively" to the State of Texas is exempt from taxation we are overruling or severely limiting our holding in State ex rel. Newman v. Bexar-Medina-Atascosa Counties W. I. D., 310 S.W.2d 641, (Tex. Civ.App.1958 writ ref'd). In Newman we held that land in possession of a veteran under a contract to purchase from the Veterans' Land Board was subject to taxation, and that the forfeiture of the veteran's

rights under the contract did not automatically cancel taxes and assessments levied against the land while the contract subsisted. 310 S.W.2d at 642. The land in Newman was not, while the contract remained in effect, land "belonging exclusively to this State." While the contract was in effect, the land was "owned by the Veteran," 310 S.W.2d at 643, with the State holding only the legal title.[3]

■ We conclude that the land is not subject to ad valorem taxation while the full legal title is held by the State.

Defendant Water District urges that the land, even if it is exempt from ad valorem taxation, is subject to special assessments levied by the district.

■ Although the power of a governmental agency to levy special assessments for local improvements is generally recognized to be an exercise of the taxing power, there are numerous decisions holding that a special assessment is not a "tax" in the sense in which that word is ordinarily used.[4] We do not think it necessary to consider the question whether such an assessment is a tax within the meaning of constitutional provisions exempting property from taxation in a case where, as here, a political subdivision created by the sovereign is attempting to impose a monetary exaction upon its creator.[5]

2. Prior to the Fertitta decision, language in the Texas cases lent support to the view that property owned by a governmental agency is exempt from taxation only when it is held and used for a public purpose, and that Article 7150 is inoperative insofar as it purported to exempt from taxation all publicly owned property, irrespective of the use to which it was being put. See City of Abilene v. State, 113 S.W.2d 631, 635 (Tex.Civ. App.—Eastland 1937, writ dismd.). This view originally adopted by the Supreme Court in Fertitta (9 Tex.Sup.Ct.Journ. 451, June 11, 1966) was rejected on motion for rehearing.

3. Apparently, in Newman this Court did not rely on Article 7173, which provides that, for purposes of taxation, one holding

land under a contract of sale from the State shall be regarded as owner of the land. While this statute lends support to the Newman holding, it can have no application where, as here, there is no outstanding contract of sale.

4. City of Wichita Falls v. Williams, 119 Tex. 163, 26 S.W.2d 910 (1930) ; Harris County v. Boyd, 70 Tex. 237, 7 S.W. 713 (1888) ; Wichita County Water Improvement District No. 2 v. City of Wichita Falls, 323 S.W.2d 298 (Tex.Civ.App.— Fort Worth 1959 (writ ref'd n. r. e.).

5. Although the Texas Supreme Court has held that land held by a county for public purposes was not subject to a special assessment levied by a municipality, in view of Art. 11, Sec. 9 of the Texas Con-

Even if it be assumed that a county or municipality is subject to special assessments levied by another political subdivision of the State, it does not necessarily follow that a subordinate political subdivision can impose an involuntary monetary obligation on the sovereign. It is generally held that, in the absence of clear legislative authorization, a political subdivision of the State has no power to levy a special assessment against State property.[6] We adopt this view at least in a case where, as here, the sovereign is neither making nor contemplating any use of the allegedly benefitted land and has neither received nor requested the services rendered by the assessing agency.

The judgment of the trial court is affirmed.

stitution, which exempts from taxation property of cities and counties held for public purposes (Harris County v. Boyd, supra, n. 4), subsequent decisions have reached contrary results. See, for example, Wichita County Water Improvement District No. 2 v. City of Wichita Falls, supra, n. 4, where it was held that land owned by a city is subject to special assessments levied by a water district. Cf. City of Wichita Falls v. Williams, supra, n. 4, where the Supreme Court held that

a special assessment was not a tax within the meaning of the constitutional provision permitting the forced sale of a homestead for taxes.

6. Anno: 90 A.L.R. 1137, 1143 (1934); 14 McQuillin, Municipal Corporations (3d 1950) Sec. 38.73, p. 200; 2 Antieau, Municipal Corporation Law (1969), Sec. 14.18, p. 326. Contra: State ex rel. Londerholm v. City of Topeka, 201 Kan. 729, 443 P.2d 240 (1968).