

# The Attorney General of Texas

December 31, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable William P. Clements, Jr.  Opinion No. MW-551
Governor of Texas
State Capitol  Re: Whether state agencies
Austin, Texas  78711  must pay a drainage fee imposed
  by the city of Austin to fund a
  Drainage Utility System

Dear Governor Clements:

You have asked whether state agencies which control state-owned property located within the city limits of the city of Austin must pay a drainage fee which was recently approved by the city. The following details concerning this fee are set forth in a brief which was sent to us by one of the affected agencies:

> As we understand the subject drainage fee imposed by the city of Austin, such fee would apply to all land located within the city and would be calculated at a given rate on a per acre (or fractional per acre) basis. The rate would vary as to whether the property upon which it is imposed is (1) residential, (2) improved, or (3) commercial, but the rate under each category would be constant. This fee would be multiplied times the number of acres owned and would be charged by adding one-twelfth (1/12th) of the total to the city of Austin electricity and water bill sent to the owner of the property each month. The proceeds from this fee would be used exclusively in an attempt to keep the various creek and streambeds within the city limits flowing freely. The question to be determined in the opinion request is whether this fee may be validly assessed against state-owned property.

One of the questions raised by these facts is whether this "drainage fee" is a "tax" or a "special assessment." See, e.g., City of Wichita Falls v. Williams, 26 S.W.2d 910 (Tex. 1930) (distinction between tax and special assessment). In some instances, the characterization of a monetary exaction as a "tax" or a "special assessment" will determine whether it may be validly imposed. See,

e.g., Wichita County Water Improvement District No. 2 v. City of Wichita Falls, 323 S.W.2d 298 (Tex. Civ. App. - Fort Worth 1959, writ ref'd n.r.e.) (because exaction was an "assessment" rather than a "tax," water improvement district could levy it against land owned by city within confines of district). In the present instance, however, we conclude that, regardless of whether this "drainage fee" is characterized as a "tax" or a "special assessment," it may not be imposed against state-owned property located in the city of Austin. We therefore need not decide how to characterize this fee.

In Maverick County Water Control and Improvement District No. 1 v. State, 456 S.W.2d 204 (Tex. Civ. App. - San Antonio 1970, writ ref'd), the water district appealed from a trial court judgment which declared that certain land owned exclusively by the Veterans' Land Board, a state agency, was "free of all liens and claims for taxes or other charges." Id. at 205. The "other charges" consisted of assessments and water delivery charges. The court of civil appeals affirmed the trial court's judgment. It held (1) that the land in question was exempt from ad valorem taxes under article 7150, V.T.C.S., (since repealed; see now Property Tax Code section 11.11); and (2) that the land was not subject to special assessments levied by the water district for local improvements. In connection with the latter holding, it stated:

> Although the power of a governmental agency to levy special assessments for local improvements is generally recognized to be an exercise of the taxing power, there are numerous decisions holding that a special assessment is not a 'tax' in the sense in which that word is ordinarily used. We do not think it necessary to consider the question whether such an assessment is a tax within the meaning of constitutional provisions exempting property from taxation in a case where, as here, a political subdivision created by the sovereign is attempting to impose a monetary exaction upon its creator.
>
> Even if it be assumed that a county or municipality is subject to special assessments levied by another political subdivision of the State, it does not necessarily follow that a subordinate political subdivision can impose an involuntary monetary obligation on the sovereign. It is generally held that, in the absence of clear legislative authorization, a political subdivision of the State has no power to levy a special assessment against State property. We adopt this view at least in a case where, as here, the

> sovereign is neither making nor contemplating any use of the allegedly benefitted land and has neither received nor requested the services rendered by the assessing agency. (Emphasis added).

456 S.W.2d at 206-07.

We need not, in this instance, attempt to determine the precise reach of the Maverick County court's holding regarding the validity of special assessments against state-owned property. This much, at least, appears clear: where there is no "clear legislative authorization" for a particular special assessment against state-owned property, and where the state has done nothing to indicate its willingness to be subjected to such assessment, the assessment is impermissible, because it would result in an "involuntary monetary obligation on the sovereign." 456 S.W.2d at 207. It should be emphasized that the Texas Supreme Court refused writ of error in the Maverick County case without reservation.

Our attention has not been directed to any statute which provides "clear legislative authorization" for the city of Austin to levy its drainage fee against state-owned property within its boundaries. We have found no such statute on our own. Nor have we been advised of any actions on the part of the state which indicate its willingness to pay this fee. We therefore conclude that, under the facts that we have been given, even if this drainage fee is characterized as a "special assessment," it may not be assessed against state-owned property located within the city limits of the city of Austin. We think it is clear that if the fee is in fact a "tax," it may not be levied against that property. See Prop. Tax Code §11.11.

## S U M M A R Y

State agencies which control state-owned property within the city limits of the city of Austin are exempt from a drainage fee which was recently approved by the city.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moellinger
George Warner
Bruce Youngblood