

# The Attorney General of Texas

July 17, 1986

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
.ston, TX. 77002-3111
/ ι.3/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Lias B. "Bubba" Steen
Executive Director
State Purchasing and General
   Services Commission
P. O. Box 13047, Capitol Station
Austin, Texas   787:.1

Opinion No. JM-523

Re: Whether the city of Austin
may assess a capital recovery
fee on state construction pro-
jects

Dear Mr. Steen:

You ask whether a home rule city may legally assess capital recovery fees against state construction projects. The city requires that the owner of any new construction must pay a capital recovery fee at the time a water tap is purchased. The amount of the fee is determined by the size and type of water meter required for the project. The fees are intended to include both the actual costs of providing new service to a specific site and the estimated proportional cost of building and maintaining the general water infrastructure to meet the collective demands of all new development. You assert that the city may not assess these fees against state construction projects.

The question presented is one raised but left unanswered in Maverick County Water Control and Improvement District No. 1 v. State, 456 S.W.2d 204 (Tex. Civ. App. – San Antonio 1970, writ ref'd) and Attorney General Opinion MW-551 (1982). A central question in Maverick involved the nature of the charges -- whether they constituted a tax or a special assessment. Special assessments differ from general taxes insofar as special assessments are levied only on land, the amount based on the benefits conferred to the land; a special assessment is unique as to time and locality. See generally 456 S.W.2d 204, note 4 (cases cited therein); Londerholm v. City of Topeka, 443 P.2d 240 (Kan. 1968). The Maverick court held that state statutes clearly exempt state property from taxation by a water control and improvement district so long as the state holds full legal title to the property. 456 S.W.2d at 206 (relying on article 7150, V.T.C.S., now replaced by Tex. Prop. Code §11.11); see also Tex. Const. art. XI, §9; City of Beaumont v. Fertitta, 415 S.W.2d 902 (Tex. 1967). The court acknowledged that the legal ramifications of special assessments differ from those of a tax, noting Wichita County Water Improvement District No. 2 v. City of Wichita Falls, 323 S.W.2d 298 (Tex. Civ. App. – Fort Worth 1959, writ ref'd n.r.e.) in which the court held that a city was liable for special assessments levied by a water

district. The court in <u>Wichita County</u> reasoned that a special assess-
ment is not a tax within the meaning of constitutional and statutory
provisions exempting public property from taxation.   323 S.W.2d at
300.   The <u>Maverick</u> court found it unnecessary to determine whether a
special assessment is a tax for those purposes because it adopted the
common law rule that a political subdivision of the state cannot levy
a special assessment against state property without express legisla-
tive authority.   456 S.W.2d at 206-07.   Attorney General Opinion
MW-551 applied this reasoning to a home rule city and decided that a
home rule city may not legally levy a drainage fee against state-owned
property.

On the other hand, home rule cities have full authority to do
anything the legislature could authorize them to do.   <u>Lower Colorado
River Authority v. City of San Marcos</u>, 523 S.W.2d 641, 643 (Tex.
1975).   Accordingly, as a general rule, it is necessary to look to
legislative limitations on the power of home rule cities rather than
to specific grants of power.   <u>Id.</u>   The <u>Maverick</u> court dealt with a
water control and improvement district, a political subdivision which
holds only the powers granted to it expressly or by necessary implica-
tion by the constitution or statutes of this state.   A home rule
city's powers, however, are limited to the area of its jurisdiction.
The issue at hand has state-wide implications.   Attorney General
Opinion MW-551 applied the <u>Maverick</u> case to a home rule city but did
not address the different levels of power held by home rule cities and
special districts.   The sources cited by the <u>Maverick</u> court, however,
suggest that its holding was intended to be broad.   <u>See</u> 456 S.W.2d at
207, note 6 (cases cited therein).   Levying special assessments
against the state requires authorization from the state legislature.
<u>See</u> <u>id.</u>   Accordingly, we conclude that the <u>Maverick</u> rule applies to
all political subdivisions, including home rule cities.

Nevertheless, the impact of <u>Maverick</u> is limited.   The court
stated:

> Even if it be assumed that a county or munici-
> pality is subject to special assessments levied by
> another political subdivision of the State, it does
> not necessarily follow that a subordinate political
> subdivision can impose an involuntary monetary
> obligation on the sovereign.   It is generally held
> that, in the absence of clear legislative authoriza-
> tion, a political subdivision of the State has no
> power to levy a special assessment against State
> property. [Footnote omitted].   <u>We adopt this view
> at least in a case where, as here, the sovereign is
> neither making nor contemplating any use of the
> allegedly benefitted land and has neither received</u>

> nor requested the services rendered by the assessing agency. (Emphasis added).

456 S.W.2d at 207. Similarly, Attorney General Opinion MW-551 emphasized that it did not purport to address a situation where the state acted in a manner that indicated a willingness to pay a fee. In the question presented, the state is requesting water service from the city.

Maverick stands for the proposition that the city cannot impose an involuntary monetary obligation on the state without express legislative authorization. Accordingly, the city cannot treat state property in the same manner as private property with regard to special assessments for local improvements. It does not follow, however, that the city cannot charge the state for the actual cost of extending service which the state expressly requests. As indicated previously, the fees in question are intended to include both the actual costs of providing new water service to a specific site and the estimated proportional cost of building the general infrastructure. To the extent that the city can determine the actual costs, both general and specific, attributable to extending service to the state, we do not believe that Maverick prevents the city from requiring the state to pay those costs as a condition of extending service. The city may not, however, assess the state for its pro-rata share of the cost of local improvements which provide benefits that are too general to specifically apportion to each user.

Further, we emphasize that any "exemption" for state property from special assessments by political subdivisions is limited to property used exclusively for public purposes. It is well-settled in Texas that the constitutional and statutory exemption of state property from taxes applies only when the property is used exclusively for public purposes. See Satterlee v. Gulf Coast Waste Disposal Authority, 576 S.W.2d 773 (Tex. 1978); State v. Houston Lighting and Power Co., 609 S.W.2d 263 (Tex. Civ. App. - Corpus Christi 1980, writ ref'd n.r.e.); Attorney General Opinion MW-430 (1982); see also Central Appraisal District of Erath County v. Pecan Valley Facilities, Inc., 704 S.W.2d 86 (Tex. App. - Eastland 1985, no writ). We believe that the courts of this state would apply similar restrictions to the common law "exemption" from special assessments announced in the Maverick case. This conclusion finds support in the sources relied upon in Maverick. For example, one such source states the general rule as follows:

> Apart from constitutional or statutory authorization public property . . . used for public purposes is not liable to special assessment for local improvements. . . . (Emphasis added).

14 McQuillin, Municipal Corporations (3d. ed., rev. 1970) §38.73
(cited in Maverick County, 456 S.W.2d at 207, note 6).

S U M M A R Y

Without express constitutional or legislative
authorization, a home rule city may not levy
special assessments against state property which
is used solely for public purposes. This general
rule, however, does not prevent a city from
requiring the state to pay the actual costs
attributable to extending service to the state
when the state requests the service.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General