

# THE ATTORNEY GENERAL
# OF TEXAS

August 9, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable Garry Mauro
Commissioner
General Land Office
Stephen F. Austin Building
1700 North Congress Avenue
Austin, Texas 78701

Opinion No.   JM-1085

Re:   Whether   taxes   accrue against real  property held  in the Veterans' Land Fund after forfeiture in a contract of sale by the Veterans' Land Board  (RQ-1697)

Dear Mr. Mauro:

You inform us  that the Veterans' Land Board . recently received tax bills from taxing units for current and delinquent ad valorem taxes levied on real property that had been conveyed by contract of sale to qualifying veterans but reverted to the  board after forfeiture  of such  contracts. Consequently, you ask two  questions regarding the  taxation of real property comprising the Veterans' Land Fund:

> 1.   Do taxes accrue against real  property held  in  the Veterans  Land  Fund  after forfeiture of a  contract of  sale by  the Veterans Land Board?

> 2.   Do penalties and interest on pre-existing tax liabilities  continue to  accrue against the  real property after  forfeiture reverts full  title to  the property  in  the State of Texas?

We answer your  first question in  the negative.  Taxes may not be  imposed against real  property held  in  the Veterans' Land Fund after there  has been a forfeiture of  a contract of  sale  and  equitable and  legal  title  to  the property has reverted to the  possession and control of  the board.  We answer your  second question in the  affirmative. Penalties and interest continue to accrue on preexisting tax liabilities against  real  property after  forfeiture vests full title  to the  property in  the state.   We also  note, however, that while  the tax  lien created  by the  previous

owner's failure to properly tender his taxes remains in force during that period when the title to the real property reverts to the Veterans' Land Board, such a lien is unenforceable against the state. Such a lien would be enforceable against any subsequent purchaser, and the veteran-purchaser against whom the taxes were originally imposed, of course, remains personally liable.

The Veterans' Land Board [hereinafter the board] was created by amendment to the Texas Constitution in 1946 in order to make low-interest loans available to eligible veterans who served in the armed forces of the United States during specified periods. Tex. Const. art. III, § 49-b, interp. commentary (Vernon 1984); see generally Nat. Res. Code § 161.001 et seq. The Veterans' Land Board, using public funds, purchases a particular plot of land at the request of an eligible veteran. The land then is resold by the state to the veteran under a contract for a deed. The contract delivers equitable title and possession to the veteran; the state, through the board, retains legal title until the full purchase price, interest, and fees have been paid. See Venable v. Patti, 490 S.W.2d 194 (Tex. Civ. App. - Texarkana 1973, writ ref'd n.r.e.); City of Garland v. Wentzel, 294 S.W.2d 145 (Tex. Civ. App. - Dallas 1956, writ ref'd n.r.e.); see also Attorney General Opinion JM-774 (1987).

If a purchaser defaults on a contract, then the board may declare a forfeiture and take possession of the property. Nat. Res. Code §§ 161.311-161.324. Once forfeiture proceedings have been completed, both equitable and legal title are vested in the Veterans' Land Board, and the property belongs to the state. See Maverick County Water Control & Improvement Dist. No. 1 v. State, 456 S.W.2d 204 (Tex. Civ. App. - San Antonio 1970, writ ref'd).

Article VIII, section 1, of the Texas Constitution provides in relevant part: "All real property and tangible personal property in this State . . . shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Article VIII, section 2, provides in relevant part that "[t]he legislature may, by general laws, exempt from taxation public property used for public

purposes."[1]  Pursuant to article VIII, section 2, the legislature enacted section 11.11 of the Tax Code, governing the taxation of public property, which provides in pertinent part:

> (a)  Except as provided by Subsections (b) and (c) of this section, property owned by this state or a political subdivision of this state is exempt from taxation <u>if the property is used for public purposes.</u>
>
> . . . .
>
> (d)  <u>Property owned by the state that is not used for public purposes is taxable. Property owned by a state agency or institution is not used for public purposes if the property is . . . used to provide private residential housing for compensation to members of the public other than students and employees of the state agency or institution owning the property, unless the residential use is secondary to its use by an educational institution primarily for institutional purposes</u>. Any notice required by Section 25.19 of this code shall be sent to the agency or institution that owns the property, and it shall appear in behalf of the state in any protest or appeal related to taxation of the property.  (Emphasis added.)

It is suggested that the real property that comprises the Veterans' Land Fund is taxable under subsection (d) because such property appears to be "used to provide private residential housing for compensation to members of the

---

1.  Article XI, section 9, of the Texas Constitution by its terms exempts "property of counties, cities and towns, owned and held only for public purposes, . . . and all other property devoted exclusively to the use and benefit of the public . . . from taxation . . . ."  This section is self-executing.  Because the last clause has never been construed to apply to property owned by the state, we need not discuss the cases involving counties and cities that rely upon this provision.

public other than students and employees of the state agency or institution owning the property." It is also suggested that such property is not used for a public purpose, that the board stands in no different legal position from that of any other mortgage company that is required to pay ad valorem taxes on any real property on which its mortgagors default, and that real property comprising the fund falls squarely within subsection (d) of section 11.11 of the Tax Code.

The quoted language of subsection (d) of section 11.11 of the Tax Code does not require the taxation of real property comprising the Veterans' Land Fund when legal title to such real property rests with the state. The Veterans' Land Board does not provide "residential housing for compensation to members of the public . . . ." Rather, it provides the financing needed to purchase private residential housing, and it offers it only to qualifying veterans of the United States' armed forces.[2]

In addition, the legislative history of subsection 11.11(d) does not indicate that the legislature intended to deviate from the long-accepted practice of exempting from ad valorem taxation the real property comprising the Veterans'

---

2. A brief submitted to us argues that the fact that only qualifying veterans may participate in the land program necessarily means that the program is not for a public purpose under article VIII of the Texas Constitution. We disagree. The test for determining whether public property is tax exempt is whether it is used primarily for the health, comfort, and welfare of the public. It is not essential that it be used for governmental purposes; it is sufficient that it be used for "proprietary" purposes. A & M Consol. Indep. School Dist. v. City of Bryan, 184 S.W.2d 914 (Tex. 1945). It is immaterial whether only residents of a taxing unit are benefitted or whether others benefit as well; the fact that property is owned by the public and is used primarily for the health, comfort, and welfare of the public of some portion of the state is sufficient to entitle such property to tax-exempt status. State v. Houston Lighting & Power Co., 609 S.W.2d 263 (Tex. Civ. App. - Corpus Christi 1980, writ ref'd n.r.e.); see also Attorney General Opinions JM-405 (1985); MW-430 (1982); MW-391 (1981).

Land Fund. See Hearings on Tex. H.B. 30 before the Senate Finance Committee, 67th Leg. 22-31 (August 5, 1981) (transcript available from Senate Staff Services). It appears that the legislature intended that property owned by a political subdivision but not used for the public purpose for which it was originally acquired should not be tax exempt. The real property at issue here, however, is being used for the purpose for which it was acquired originally, namely the creation of a "land fund" to facilitate the purchase of real property by veterans through the granting of low-interest loans. Article III of the Texas Constitution was amended by the addition of section 49-b to permit the legislature to do what the constitution otherwise would prevent it from doing, namely the "giving or lending, of the credit of the State in aid of, or to any person . . ." or the granting of "public moneys to any individual." See Tex. Const. art. III, §§ 50, 51. The very establishment of such a fund in the Texas Constitution impresses upon it the nature of a public purpose.

Moreover, the Texas Constitution exempts real property comprising the Veterans' Land Fund from ad valorem taxation after the purchaser of such property has defaulted on his payments and full title to the property reverts to the control of the state. Section 49-b of article III of the Texas Constitution provides in relevant part:

> Such lands heretofore or hereafter purchased and comprising a part of said Fund are hereby declared to be held for a governmental purpose, although the individual purchasers thereof shall be subject to taxation to the same extent and in the same manner as are purchasers of lands dedicated to the Permanent Free Public School Fund.

We recently declared in Attorney General Opinion JM-1049 (1989) that the interest in real property comprising the permanent school fund that is retained by the state when it leases such real property to private businesses is exempt from ad valorem taxation, but the leasehold estates conveyed to the private businesses are themselves taxable. The reasoning that we employed in Attorney General Opinion JM-1049, regarding the proper construction of both the Texas Constitution and the relevant Tax Code provisions, is equally applicable here. By its terms, section 49-b of article III likewise would exempt from ad valorem taxation real property comprising the Veterans' Land Fund.

Finally, case law in this area of law compels us to answer your first question in the negative. On the basis of <u>Maverick County Water Control & Improvement Dist. No. 1 v. State</u>, <u>supra</u>, we conclude that real property comprising the Veterans' Land Fund, equitable title to which has reverted back to the state after the default of the purchaser, is not subject to taxation while it is in the hands of the state.

In <u>Maverick County</u>, the Veterans' Land Board sought a declaration that certain real property owned by the board was free of all claims for taxes or other charges made, levied, or assessed by a water control and improvement district, an independent school district, and a county. A veteran had purchased real property comprising part of the Veterans' Land Fund in 1956; he failed to make the required payments and the board declared his rights under the contract forfeited in 1962. After the forfeiture, the board held full legal and equitable title to the property. The trial court declared that the land was free of all taxes and other charges levied by the taxing units after the rights of the veteran under the contract of sale were terminated, <u>i.e.</u>, after the veteran had defaulted and the state reacquired both the equitable and legal title to the property. The court of appeals agreed. It held that where real property had been purchased by the board and sold to an eligible veteran but subsequently repossessed, the real property, thereafter, was subject neither to ad valorem taxation nor to special assessments levied during the veteran's possession.

It has been suggested that <u>Maverick County</u> is no longer controlling law in this area. It is contended, first, that section 11.11 of the Tax Code was enacted after <u>Maverick County</u> was handed down and constitutes the legislature's most recent statement regarding its intention to tax publicly-owned property that is not used for the public purpose for which the property was originally acquired. As we noted earlier, the 1981 amendment to section 11.11 does not compel us to conclude that real property comprising the Veterans' Land Fund is taxable. Neither the actual language used in the amendment nor the legislative history indicating the evident intention of the legislature in passing the amendment supports such a reading. And, as we stated above, we believe that the real property comprising the Veterans' Land Fund is being used for the precise public purpose for which the real property was acquired by the board in the first place.

It is also contended that the Maverick County case is suspect because it appears to be predicated upon a Texas Supreme Court case that is itself of doubtful precedential value. We agree that the court in Maverick County did rely in part on a Texas Supreme Court case whose precedential value has been undermined by subsequent decisions, but we disagree that a court considering the matter again would reach a different result.

The case that the Maverick County court cited is City of Beaumont v. Fertitta, 415 S.W.2d 902 (Tex. 1967). In Fertitta, the court considered whether real property owned by a city, though leased to private persons for the purpose of carrying on a private commercial enterprise, was exempt from ad valorem taxation regardless of the fact that the use to which the property was put was not public. The court in Fertitta departed from the method of constitutional analysis that courts traditionally had invoked when the issue was whether property owned by a political subdivision was entitled to receive tax-exempt status. See Fertitta, supra, (dissenting opinion).

Prior to Fertitta, courts had always looked to whether the property was both owned by a political subdivision and used or held for a public purpose, and assuming that it was not so used, it would be taxable under article VIII, sections 1, and 2, of the Texas Constitution. See A & M Consol. Indep. School Dist. v. City of Bryan, 184 S.W.2d 914 (Tex. 1945); Daugherty v. Thompson, 9 S.W. 99 (Tex. 1888); City of Abilene v. State, 113 S.W.2d 631 (Tex. Civ. App. - Eastland 1937, writ dism'd) (holding disapproved of on other grounds in Fertitta). The court in Fertitta departed from the traditional mode of constitutional analysis in declaring that the constitution does not require that property owned by a municipality but not used for a public purpose be taxed. It only requires that private property held by natural persons or private corporations be taxed. Therefore, since the constitution does not require municipal property to be taxed, the legislature needs no constitutional authority to exempt it. It chose to do so in the now-repealed article 7145, V.T.C.S. This statute required that all property, except that which is expressly exempted, be taxed. The now-repealed article 7150, V.T.C.S., exempted "[a]ll property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof, or the United States . . . ." Public ownership was enough; no public use was required.

    The dissent in Fertitta correctly pointed out that this constitutional and statutory construction is novel;  indeed, earlier decisions, which went to great length discussing the holding and using requirements of public property, make sense only if one accepts the claim that the constitution requires all property to be taxed unless it is specifically exempted pursuant to a constitutional provision, i.e., that public property, in order that it be deemed tax-exempt, must fall within the limitations set forth in article VIII, section 2, or article XI, section 9, of the Texas Constitution. No subsequent case explicitly has employed such an analysis. Moreover, the Texas Supreme Court clearly narrowed the reach of Fertitta in Leander Indep. School Dist. v. Cedar Park Water Supply Corp., 479 S.W.2d 908 (Tex. 1972) and in Satterlee v. Gulf Coast Waste Disposal Auth., 576 S.W.2d 773 (Tex. 1978).

    The Leander case did not concern property owned by a political subdivision leased to a private person for the purpose of a private commercial enterprise; rather, it concerned property owned by a private person but used for public purposes. In overturning a lower court judgment sustaining the tax-exempt status of such property, the court specifically held that property, to be exempt, must be used for public purposes. The court in Leander did not, however, explicitly reject the mode of constitutional analysis employed in Fertitta. In Satterlee, the court reaffirmed the requirement that there be a public use before property owned by a political subdivision be declared tax-exempt.

    If the traditional method of analysis were applied to the instant situation, namely that public property must be put to a public use before it may be exempt from ad valorem taxation, we think that a court would hold that by virtue of the inclusion of section 49-b of article III of the Texas Constitution, the real property comprising the Veterans' Land Board is exempt from taxation so long as full title to that property rests with the state. If the Fertitta test were adopted, on the other hand, a court would disregard any necessity that such property be used for a public purpose and look only to whether the property was owned and controlled by the state or a political subdivision of the state; it would conclude, although for different reasons, that the property described here is tax-exempt.

    We note, moreover, that the argument undermining Maverick County because of its reliance on Fertitta is refuted effectively by the fact that the Texas Supreme Court

explicitly reaffirmed in a later case its approval of the _Maverick County_ case. In _Satterlee_, the court concluded that certain real property and the improvements located thereon that were purportedly "owned" by local taxing units were not exempt from taxes because the ownership interest of the taxing units was not exclusive. In discussing the public use and public ownership requirements for tax exemption, the court declared:

> After _Fertitta_, we approved without qualification the opinion of the Court of Civil Appeals in _Maverick County Water Control & Improvement District # 1 v. State_, 456 S.W.2d 204 (Tex. Civ. App. 1970, writ ref'd). There the Court recognized _Fertitta_ but cited _State v. Bexar-Medina-Atascosa Counties Water Improvement District_, 310 S.W.2d 641 (Tex. Civ. App. 1958, writ ref'd), also approved by this Court, where it was held that land did not belong exclusively to the State while the contract with the Veterans Land Board remained in effect. As to this, the Court in _Maverick_ wrote that 'While the contract was in effect, the land was "owned by the Veteran," 310 S.W.2d at 643, with the State holding only the legal title.' The Court upheld the tax exemption in _Maverick_ for the reason as stated in the opinion that the Veterans Land Board 'held full legal and equitable title to the land.' We approved the principles of law declared in the opinion by unqualified refusal of writ of error.

> Our conclusion that the Authority was not vested with the requisite exclusive ownership renders unnecessary a re-examination of the holding in _Fertitta_ that Article 7150, § 4, provides for the exemption from taxation of municipal property regardless of the use to which it is put or the purposes for which it is held.

576 S.W.2d at 777-8.

Therefore, we answer your first question in the negative and conclude that real property comprising part of the Veterans' Land Fund is exempt from ad valorem taxation while legal and equitable title to such real property is

vested in the state. Such real property is taxable to the purchaser under the contract for sale so long as the contract is in effect; after the purchaser defaults and legal title reverts to the control of the state, such real property is exempt from taxation. We now turn to your second question.

You next ask:

> Do penalties and interest on preexisting tax liabilities continue to accrue against the real property after forfeiture reverts full title to the property in the State of Texas?

Section 33.01 of the Tax Code governs the imposition of penalties and interest on delinquent taxes and provides the following:

> (a) A delinquent tax incurs a penalty of six percent of the amount of the tax for the first calendar month it is delinquent plus one percent for each additional month or portion of a month the tax remains unpaid prior to July 1 of the year in which it becomes delinquent. However, a tax delinquent on July 1 incurs a total penalty of twelve percent of the amount of the delinquent tax without regard to the number of months the tax has been delinquent.

> (b) If a person who exercises the split-payment option provided by Section 31.03 of this code fails to make the second payment before July 1, the second payment is delinquent and incurs a penalty of twelve percent of the amount of unpaid tax.

> (c) A delinquent tax accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid.

You assert that penalties and interest may not continue to accrue on preexisting tax liabilities after the state again assumes both legal and equitable title to the real property against which delinquent taxes are due. You suggest two different arguments in support of your

proposition.   First,   you   claim   that   such   a   result   is required by the Maverick County case.   We disagree.

As we  noted previously,  Maverick County  involved  an action by the  Veterans' Land Board  for a declaration  that real property whose title had reverted to the board after  a veteran defaulted on his payments was free of all liens  for taxes or  other charges  made,  levied,  or assessed  on  the property by  a water  control and  improvement district,  an independent school district, and a county.  Specifically  at issue were  tax  liens created  when  the  veteran-purchaser failed to pay both taxes properly levied on his property  by the school district  and the county  and assessments in  the form of  flat rate  fees imposed  by the  water control  and improvement district.

The court of appeals described the trial court judgment in  the  following  fashion:  "The  trial  court's  judgment declares the land free from  taxes and other charges  levied by defendants  after the  rights of  the veteran  under  the contract of sale were terminated."   456 S.W.2d at 205.   It is not clear from the court of appeals' decision whether the trial court distinguished between those taxes and flat  rate assessments imposed while the  veteran's contract was  still in force and those that  the taxing units sought to  enforce after the full title had reverted to the state.

The court of appeals in Maverick County held that taxes cannot be imposed on real property comprising the  Veterans' Land Fund after  the title  to the property  reverts to  the state; the property in question was subject to taxation only during that  period of  time during  which the  veteran-pur-chaser owned  the equitable  title.  Based  upon an  earlier case, the court also held that liens for pre-existing taxes, i.e., taxes levied on the  property while the contract  with the veteran was still in  force, were still in effect.   The court, however, apparently  did hold  that no  lien for  the assessment of  the  flat rate  taxes  was  created  by  the veteran's failure to tender such assessments.

You rely  upon the  language from  the Maverick  County case declaring  the property  free from  taxes "or  other charges levied" by the taxing units to support the  proposi-tion that penalties and interest on the preexisting taxes do not continue  to accrue.   You apparently  construe this  to mean that any penalties and interest imposed for failing  to pay the taxes levied in a timely fashion may not continue to accrue after title  reverts to the  state.  In other  words,

you assert that the phrase "or other charges" includes penalties and interest imposed when accrued taxes become delinquent. You state in your request for an opinion:

> The Court affirmed the determination of the trial court that the property itself is 'free of all liens and claims for taxes or other charges . . . made, levied or assessed' by any taxing entities. Id. at 205.

Brief of Texas Veterans Land Board at 8.

We disagree with this construction of Maverick County. The "charges" referred to by the court do not include interest and penalties. The "charges," when understood in the context of Maverick County and the authorities it cites, are special assessments made by the water district. See, e.g., City of Wichita Falls v. Williams, 26 S.W.2d 910 (Tex. 1930); Harris County v. Boyd, 7 S.W. 713 (Tex. 1888); Wichita County Water Improvement Dist. No. 2 v. City of Wichita Falls, 323 S.W.2d 298 (Tex. Civ. App. - Fort Worth 1959, writ ref'd n.r.e.); see also Attorney General Opinions JM-1035 (1989); JM-523 (1986). The Maverick County court merely held that a special district could not impose flat rate fees against the property in that instance while title to it was held by the state. Maverick County does not stand for the proposition that penalties and interest for delinquent taxes may not be imposed on real property that has reverted to the state; it does not even mention penalties and interest.

Your second argument in support of the proposition that penalties and interest may not continue to accrue against real property whose title has reverted to the Veterans' Land Board is that permitting such accrual of penalties and interest is tantamount to permitting the taxation of such property, however indirectly. On the other hand, a brief submitted to us suggested that the lien created by the veteran's failure to properly tender the taxes due extends also to the penalties and interest that accrue.

Both arguments rest on the presupposition that penalties and interest are to be treated as though they were taxes. On the one hand, if accrued penalties and interest are the equivalent of taxes and if taxes may not be imposed upon real property while title is in the possession and control of the Veterans' Land Board, it can be argued that penalties and interest likewise may not continue to accrue

against such real property. On the other hand, if accrued penalties and interest are the equivalent of taxes and if an enforceable lien is created by the veteran's failure to properly tender the taxes before they became delinquent, it can be argued that any waiver of accrued penalties and interest violates the Texas constitutional prohibitions against releasing or extinguishing the indebtedness of any individual owed to the state or to any political subdivision of the state, Tex. Const. art. III, § 55, or against the release from the payment of taxes. Id. art. VIII, § 10.

A surface reading of article VIII, section 15, of the Texas Constitution lends support to your presupposition that penalties and interest should be treated as though they were taxes. That section provides:

> The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide.

While section 15 clearly does not create a lien on any property for failing to pay any penalties and interest that are imposed along with delinquent taxes,[3] it might be argued that, at least as to summary seizure and sale and judicial sale and execution, penalties and interest are treated in the same manner as the delinquent taxes on which the calculation of such penalties and interest are based. However, the Texas Supreme Court has not construed section 15 to require that penalties and interest be treated as though they were taxes that were levied.

---

3. While section 15 of article VIII of the Texas Constitution does not create a lien for failing to pay any penalties and interest imposed, section 32.01 of the Tax Code does. Of course, any lien that the legislature sees fit to create by statute can also be amended by the legislature by statute.

In <u>Jones v. Williams</u>, 45 S.W.2d 130 (Tex. 1931), the Texas Supreme Court upheld the constitutionality of a statute that provided:

> That all interest and penalties accrued and as now fixed by law, on all . . . taxes . . . other than [taxes of] incorporated cities and towns, delinquent up to and including October 20, 1931, shall be, and the same are hereby released, provided said taxes are paid on or before January 31, 1932.

<u>Jones</u>, <u>supra</u>, at 131.

The court in <u>Jones</u> first rejected the assertion that the statute could be sustained by reference to section 10 of article VIII of the Texas Constitution. Section 10 provides:

> The Legislature shall have no power to release the inhabitants of, or property in, any county, city or town from the payment of taxes levied for State or county purposes, unless in case of great public calamity in any such county, city or town, when such release may be made by a vote of two-thirds of each House of the Legislature.

If the exactions (<u>i.e.</u> penalty and interest) imposed upon taxpayers for failing to timely tender payment of accrued taxes are themselves "taxes" for purposes of article VIII, section 10, then the court, after concluding that the statute at issue was not enacted pursuant to the "great public calamity" requirement, would perforce have struck down the statute. Because it did not, it is clear that the court did not conclude that such exactions constitute "taxes."

Nor did the court in <u>Jones</u> consider such exactions an instance of an "indebtedness, liability, or obligation" for purposes of article III, section 55, of the Texas Constitution. Section 55 provides:

> The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to

> this State or to any county or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years.

If the court in Jones had concluded that such exactions were in reality interest eo nomine imposed by the state as compensation for the detention of its money, rather than viewing such exactions as a form of "penal interest," the statute would have run afoul of sections 51 and 55 of article III. The court set forth the history surrounding attempts to enforce public revenue and tax collection procedures and declared:

> On the whole, we have concluded that the impositions made for delinquency in rendering property for taxation, and for failure to pay taxes, whether these impositions are denominated 'penalties,' 'interest,' 'forfeitures,' or whether prescribed without definition or name, are all in reality penalties imposed for delinquency or failure of duty, and all enacted in aid of the state's revenue, rather than as charges made by the state for the use or detention of its money. In other words, the exactions are 'penalties' rather than 'interest' in the commercial or statutory sense. (Emphasis in original.)

45 S.W.2d at 133. The court concluded:

> We think the act is constitutional for the reason that the Legislature has the power to release, cancel, annul, or suspend penalties previously accrued for delinquent taxes, so long as these penalties have not been reduced to final judgment.

Id.

Finally, in response to the claim that the statute at issue violated article III, section 56, of the Texas Constitution, which prohibits the legislature from passing certain local and special laws remitting penalties, the Jones court concluded that the legislature by implication could remit such penalties by general law:

> The only express limitation on the right of the Legislature to remit penalties is that specified in section 56 of article 3, which prohibits the Legislature from 'remitting fines, penalties, and forfeitures by <u>special law</u>.' The necessary implication from the language used is that 'fines, penalties and forfeitures' may be remitted by <u>general laws</u>, such as the one before us. . . . Nor do we think that the Legislature is prohibited, either expressly or by necessary implication, by the language of any other section of the Constitution. If it be said that the provisions of sections 51 and 55 apply to penalties imposed for tax delinquency, then, for the same reason, we would be compelled to say they apply to <u>all classes of penalties</u>, and to <u>fines</u> and <u>forfeitures</u> as well. Such a construction would render meaningless the power clearly reserved to the Legislature by the terms of section 56 of article 3, to release 'fines, penalties and forfeitures' by general law. (Citations omitted.) (Emphasis in original.)

<u>Id.</u> at 137.

Clearly, if the Texas Supreme Court construed article VIII, section 15, of the Texas Constitution to require that penalties and interest be accorded the same treatment as taxes are accorded, then the court would not have concluded in <u>Jones</u> that the statute then at issue was constitutional. Therefore, we reject both your assertion and the suggestion by the law firm submitting a brief: it is not the case that penalties and interest must be waived, nor is it the case that penalties and interest cannot be waived.

It is clear that the legislature is empowered to enact a statute that effectively would waive the penalties and interest accrued on unpaid delinquent taxes levied on real property whose title has reverted to the possession and control of the Veterans' Land Board. <u>See, e.g.,</u> Attorney General Opinion WW-780 (1960) (upholding and construing statute that permitted that state to tender unpaid and delinquent taxes on Veterans' Land Fund land in order for the state to clear title thereto); <u>see also</u> Attorney General Opinion M-139 (1967) (distinction between "tax" and "penalty" well established in law). It is equally clear

that the legislature has not so acted. Section 33.011 of the Tax Code permits the governing body of a taxing unit to waive penalty and interest under certain circumstances and provides:

> The governing body of a taxing unit may provide for the waiver of penalties and interest on a delinquent tax if an act or omission of an officer, employee, or agent of the taxing unit caused the taxpayer's failure to pay the tax before delinquency and if the tax is paid within 21 days after the taxpayer knows or should know of the delinquency.

No other provision of the Tax Code addresses the waiver of penalty and interest.

Because the Texas Constitution does not require it and because the legislature has not provided for it, we conclude that penalties and interest will continue to accrue on the unpaid delinquent taxes levied upon real property comprising the Veterans' Land Board whose title has reverted to the board due to the default of the veteran-purchaser.

We note, however, that while the tax lien created by the previous owner's failure to properly tender his taxes remains in force during that period when the title to the real property reverts to the Veterans' Land Board, such a lien is unenforceable against the state. See, e.g., State v. City of San Antonio, 209 S.W.2d 756 (Tex. 1948); Childress County v. State, 92 S.W.2d 1011 (Tex. 1936); Lubbock Indep. School Dist. v. Owens, 217 S.W.2d 186 (Tex. Civ. App. - Amarillo 1948, writ ref'd). Such a lien would be enforceable against any subsequent purchaser, and the veteran-purchaser against whom the taxes originally were imposed, of course, remains personally liable. Tax Code § 32.01; Attorney General Opinions JM-1049 (1989); MW-523 (1982); H-1108 (1977).

### S U M M A R Y

> Taxes may not be imposed upon real property comprising the Veterans' Land Fund after the contract of sale has been forfeited and full title to the property has reverted to the possession and control of the state. Penalties and interest on unpaid delinquent taxes imposed on real property whose title

has reverted to the state continue to accrue. While the tax lien created by the previous owner's failure to properly tender his taxes remains in force during that period when the title to the real property reverts to the Veterans' Land Board, such a lien is unenforceable against the state. Case authority of long standing dictates that such a lien would be enforceable against any subsequent purchaser. The legislature could have, but has not, provided for waiver of such a lien against subsequent purchasers, and until it acts, the land remains charged with the lien. The veteran-purchaser against whom the taxes originally were imposed, of course, remains personally liable.

Very truly yours

JIM    MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General